738

## FARMERS EQUITY CO-OP. CREAMERY ASS'N v. UNITED STATES.

### No. 2580.

Circuit Court of Appeals, Tenth Circuit.
Jan. 9, 1943.

John E. Fitzpatrick, of Denver, Colo., for appellant.

David Morris, Asst. U. S. Atty., of Denver, Colo. (Francis M. Shea, Asst. Atty. Gen., Thomas J. Morrissey, U. S. Atty., and Joseph N. Lilly, Asst. U. S. Atty., both of Denver, Colo., and Leavenworth Colby, of Washington, D. C., Atty., Dept. of Justice, on the brief), for appellee.

Before PHILLIPS and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

The purchasing officer at Fort Warren, Wyoming, invited bids for the furnishing of eggs to be delivered at Fort Warren as called for between November 1, and November 30, 1937.

In response to the invitation, Farmers Equity Co-Op. Creamery Association,[1] on October 27, 1937, submitted a bid on Standard Form No. 31, W-749-38-17 to furnish 15,000 dozen eggs, class "A" or "B", fresh or storage, United States Standards, at 27 cents per dozen.

Form 31 in part· provided: "Farmers Equity Co-Op. Creamery Association, * * * and agrees upon receipt of written notice of the acceptance of this bid within five days (60 days if no shorter period be specified) after the date of opening of the bids, to execute, if required, the Standard Government Form of Contract (Standard Form No. 32) in accordance with the bid as accepted, and to give bond, if required, with good and sufficient surety or sureties, for the faithful performance of the contract, within 10 days after the prescribed forms are presented for signature."

It contained provisions as to discounts, for computation of time, and a warranty. Due to the fact that other bids were lower, certain of the eggs were purchased from other bidders.

On November 5, 1937, the purchasing officer requested the Association to advise him whether it would furnish 15,000 dozen class "B" storage, grade "B" 3-(1) United States Standards, in accordance with its bid for the month of November, 1937. On November 6, 1937, the Association wired the purchasing officer "We are prepared to fill your orders as per our proposal W-749-38-17 for your November require-

---

[1] Hereinafter referred to as the Association.

ments." The purchasing officer placed verbal orders for 10,040 dozen of the eggs which were delivered during November, 1937. 7,790 dozen of the eggs were rejected for alleged noncompliance with contract specifications.

On December 23, 1937, Q. M. C. Form No. 308 was mailed to the Association confirming the purchase of 2,250 dozen eggs.[2] It referred to a "verbal bid dated November 30, 1937." Paragraph No. 11 thereof read as follows:

"11. Disputes.—Except as otherwise specifically provided in this purchase order, all disputes concerning questions of fact arising under this purchase order shall be decided by the contracting officer and the contractor informed thereon, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive, upon the parties hereto. In the meantime the contractor shall diligently proceed with performance."

Standard Form No. 32 contains substantially the same provision as paragraph No. 11 of the confirmation. No request was ever made upon the Association to execute Standard Form of the contract No. 32.

The United States purchased 7,590 dozen eggs to replace the eggs rejected at a cost of $379.50 in excess of the contract price and brought this action to recover that amount from the Association. The Association answered alleging that the eggs delivered and rejected were of the kind, quality, and grade contracted for and were arbitrarily rejected by an inexperienced agent of the United States, and that as a result of such rejection, the Association had been compelled to sell the rejected eggs at a loss and that the purchaser, thereafter, sold the same eggs to the purchasing officer at Fort Warren, Wyoming, at a price in excess of the contract price.

At the trial the United States introduced the confirmation on Form No. 308. The trial court held that failure of the Association to avail itself of the provisions of paragraph No. 11 thereof precluded the defense that the rejected eggs complied with the contract and had been arbitrarily rejected, and directed a verdict for the United States for $379.50, with interest from May 24, 1939, at six per cent per annum. The Association has appealed.

U. S. Standard Form No. 32 (revised) was approved by the Secretary of the Treasury, June 18, 1935.[3] Under the heading "Directions for Preparation of Contract," the following appears: "This form or U. S. Standard Form No. 33 shall be used whenever a *formal contract* is entered into for the procurement of supplies" (Italics ours), thus indicating that there might be purchases where it would not be deemed necessary to have a formal contract executed.

The bid did not provide that the provisions of Form 32 should constitute the contract between the parties. It only provided that the Association would execute Standard Form of Contract No. 32 if required. The fair import of the provisions of the bid is that it gave the United States the election to stand on the informal contract made up of the bid, the letter of November 5, and the telegram of November 6, or to require the Association to execute Standard Form of Contract No. 32. The United States never requested the Association to execute the formal contract. Its agents, by their conduct, led the Association to believe that they were satisfied to proceed on such informal contract.

The confirmation was in no sense a requirement that the formal contract be executed. It confirmed the purchase of 2,250 dozen, not 15,000 dozen, eggs. It referred, not to the written bid of October 27, 1937, but to a verbal bid of November 30, 1937. It was not mailed until December 23, 1937, long after the eggs had been delivered and part of them rejected. A substantial part of the eggs had been rejected more than 30 days before the confirmation was received by the Association, so that as to those eggs, the 30-day limitation in paragraph No. 11 of the confirmation had run before the confirmation was received by the Association.

We are of the opinion that the bid, the letter of November 5, and the telegram of November 6 constituted the contract. Offers and acceptances by letters

---

[2] The confirmation in part read:

| "Quantity | Unit | Article | Unit Price | Total Price |
|---|---|---|---|---|
| 2,250 | doz. | Eggs, Issue, Standards | .31 | 697.50" |

[3] Code of Federal Regulations, Tit. 41, § 12.32.

and telegrams may constitute an enforceable contract even though reference be made therein to the future execution of a more formal contract.[4] This must necessarily be true where an offer has been made and accepted and a more formal contract is to be executed only if one of the parties requests it.

The judgment is reversed and the cause remanded with instructions to grant the Association a new trial.

---

[4] Sanders v. Pottlitzer Bros. Fruit Co., 144 N.Y. 209, 39 N.E. 75, 76, 29 L.R.A. 431, 43 Am.St.Rep. 757; 12 Am.Jur., p. 523, § 25.