**R. P. HILL and Mary Hill, Appellants,**

v.

**A. E. WAXBERG, doing business as Waxberg Construction Co., Appellee.**
**No. 14982.**

United States Court of Appeals
Ninth Circuit.
Oct. 26, 1956.

George B. McNabb, Jr., Fairbanks, Alaska, Wallace Aiken, Landon & Aiken, Seattle, Wash., for appellants.

Robert J. McNealy, Everett W. Hepp, Fairbanks, Alaska, for appellee.

Before DENMAN, Chief Judge, BARNES, Circuit Judge, and HAL-BERT, District Judge.

HALBERT, District Judge.

The appellee, Waxberg, brought this action in the District Court for the Territory of Alaska to recover the reasonable value of his services and the expenditures made by him in connection with a proposed building contract which was never consummated. The action was originally instituted against R. P. Hill and Mary Hill, his wife, but it was, by stipulation, dismissed as to Mrs. Hill, so we are not concerned with her on this appeal. The jury returned a verdict in favor of Waxberg for the sum of $11,167.46. Appellant attacks the judgment entered on this verdict as excessive, and at the same time asserts that the trial court incorrectly instructed the jury.

In December of 1949 appellant, R. P. Hill, summoned Waxberg, a contractor, to assist him in making preparations for the construction of a building on Hill's lot in the city of Fairbanks. It was decided between the parties that the only method of financing the transaction was to secure a commitment from the F.H.A. From the time of their first meeting, it was the understanding of the parties that if the financing could be arranged through the F.H.A. as contemplated, Waxberg would be awarded the building contract.

Pursuant to this plan, Waxberg made several trips to Seattle at the request of Hill to confer with the architects; hired a third party to secure a drill log on the property; surveyed the property; and was generally instrumental in providing the requisite data consisting of plans and cost figures for the consideration of the F.H.A. Waxberg expected to be compensated for those expenditures out of the profits derived from the contemplated contract.

In February, 1950, the F.H.A. issued the commitment, under § 608 of the Federal Housing Authority Act, 12 U.S.C.A. § 1743, which, in essence, insured a loan up to 90% of the estimated cost figure. With the commitment secured as contemplated, the parties entered into negotiations for the building contract. There is considerable conflict in the testimony over what actually transpired at these negotiations, with each party claiming that it was the unconscionable demands of the other that ultimately caused the termination of their relationship.

Hill finally entered into a building contract with another contractor and caused the original commitment to be amended to conform thereto. The evidence shows that Waxberg's plans, ideas and efforts were of some value and assistance to Hill in his endeavors.

The trial court's instructions to the jury confined the factual issues to the question of whether Waxberg [the plaintiff] was the party on whom blame for the failure to enter into the contemplated construction contract could be placed. Thus, the jury was told that it must find for Waxberg, if it found that Hill [the defendant] was at fault, or if both, or neither were at fault. The trial court concluded that the evidence undisputedly established the existence of an agreement between the parties that Waxberg would be awarded the contract.

On the question of damages the court gave the following instruction:

"If you find in favor of the plaintiff you will return a verdict in favor of the plaintiff for the value of the benefit which the defendant received as a result of the plaintiff's services and expenditures."

■ It is the propriety of this instruction, together with the alleged excessiveness of the verdict returned thereunder, which appellant attacks by this appeal. Appellant also asserts that the requisite elements for quasi-contractual recovery were not established by the evidence.

This Court is of the opinion that the District Judge's finding that there was no issue as to the existence of the elements necessary to ground an action based on an implied contract was supported by the evidence. Certain general principles of law are so immutably fixed in the continuum of Anglo-American jurisprudence that the endless citation of authority is scarcely needed to support them. That something in the nature of an implied contract results where one renders services at the request of another with the expectation of pay therefor, and in the process confers a benefit on the other, is such a principle.[1] It makes no difference whether the pay expected is in the form of an immediate cash payment, or in the form of profits to be derived from a contract, the consummation of which would or should be antici-

1. Restatement of Contracts, § 90; Restatement of Restitution, § 107 (2); Costigan, Implied in Fact Contracts, 33 Harvard Law Rev. (1920) 376; Note, 44 Harvard Law Rev. 623; 12 Am.Jur. 502.

pated by reasonable men, and it follows *a fortiori* that such a rule obtains where the contract is in fact contemplated by *both* parties.[2] That a benefit was conferred in this case is also beyond question, when it is borne in mind that the commitment which the appellant secured as a result of the efforts of the appellee was virtually irreplaceable and in no event could a substitute have been provided for it without considerable additional expense as well as a drastic alteration of terms.[3]

Unfortunately neither the District Court nor counsel during the course of the proceedings attempted to categorize the action as one based on an "implied in fact" contract or an "implied in law" contract. Although the distinction may be somewhat doctrinaire, the application of certain formalized distinctions is necessary in order to arrive at the proper measure of damages.

An "implied in fact" contract is essentially based on the intentions of the parties. It arises where the court finds from the surrounding facts and circumstances that the parties intended to make a contract but failed to articulate their promises and the court merely implies what it feels the parties really intended. It would follow then that the general contract theory of compensatory damages should be applied. Thus, if the court can in fact imply a contract for services, the compensation therefor is measured by the going contract rate.

An "implied in law" contract, on the other hand, is a fiction of the law which is based on the maxim that one who is unjustly enriched at the expense of another is required to make restitution to the other. The intentions of the parties have little or no influence on the determination of the proper measure of damages. In the absence of fraud or other tortious conduct on the part of the person enriched, restitution is properly limited to the value of the benefit which was acquired.[4]

The distinction is based on sound reason, too, for where a contract is all but articulated, the expectations of the parties are very nearly mutually understood, and the Court has merely to protect those expectations as men in the ordinary course of business affairs would expect them to be protected, whereas in a situation where one has acquired benefits, without fraud and in a non-tortious manner, with expectations so totally lacking in such mutuality that no contract in fact can be implied, the party benefited should not be required to reimburse the other party on the basis of such party's losses and expenditures, but rather on a basis limited to the benefits, which the benefited party has actually acquired.[5]

The facts in this case are such that a reasonable man might be persuaded that the elements of either theory could be satisfied, but since counsel has declined to choose between them, we are not prepared to make the choice for him.

---

2. Western Asphalt Co. v. Valle, 1946, 25 Wash.2d 428, 171 P.2d 159, noted in 22 Washington Law Rev. 139 (1947); see also Restatement of Restitution, § 57, illustration 7.

3. The cash value of the commitment was placed at $4,800. After February of 1950, the appellant, Hill, would have been unable to secure a commitment under § 608 of the Federal Housing Authority Act since Congress had withdrawn its availability to territorial applicants. Instead, Hill would have had as his only recourse to attempt to secure a commitment under § 207 of the Act, 12 U.S.C.A. § 1713, which, *inter alia*, would have required Hill to issue controlling interest in the proposed building to the Housing Authority. It goes without saying that without the original commitment, Hill would have found himself in the precise position which he has asserted he was trying to avoid, namely, the presence of someone else with a controlling interest in his project thereby diminishing his already slim equity.

4. Martin v. Campanaro, 2 Cir., 1946, 156 F.2d 127, at page 130, note 5; 44 Harvard Law Rev. 623 (1931); Restatement of Restitution, § 107, comment b, § 155 (1).

5. Note 4, supra.

Seemingly the trial court was faced with the same dilemma, and chose to resolve it by first deciding that an agreement in fact had been reached by the parties. Unfortunately, however, it followed this decision by giving an instruction on the issue of damages couched in terms of unjust enrichment. It appears that the jury was in a like manner confused, because it returned a verdict which apparently included not only the value of the benefit conferred on Hill, but also the full measure of the value of Waxberg's services and expenditures as they were given in the evidence. The instructions should have been drawn so as to avoid a commingling of the theory of damages in "implied in fact" contracts and the theory of damages in "implied in law" contracts, and if, as would appear to have been the intention of the trial court, the instructions were to be based on an "implied in law" contract growing out of the unjust enrichment of Hill, then the instructions should have identified with precision exactly what the limits of the recovery could be.[6]

We have given this case careful consideration, and notwithstanding what we have said above, we feel constrained to observe that in view of the record in the case, and what appeared to us to be the attitude of counsel at the time of the hearing before us, the ends of justice would best be served if the judgment were, by agreement of the parties, reduced to the sum of $5,896.88 (the asserted reasonable value of plaintiff's services for 43 days, plus his claimed expenses of $1,596.88).

It will, therefore, be our order that if the parties will agree that the amount of the judgment be reduced to the sum of $5,896.88 within forty days from the date on which this order is filed, that the judgment thus modified shall be affirmed, but in the event the parties are unwilling to agree to such a reduced judgment within the time prescribed, then the judgment shall be reversed and the cause then will be remanded for further proceedings not inconsistent with this opinion.

---

6. The value of the benefit conferred in the form of the commitment was fixed at $4,800. This should be the outward limit of damages unless it can be shown that the defendant appropriated any of the plaintiff's plans, suggestions, or ideas in connection with the building as it was ultimately constructed.