WESTERN MACHINERY COMPANY, a
corporation, Appellant,

v.

CONSOLIDATED URANIUM MINES,
Inc., a corporation, Appellee.

No. 5559.

United States Court of Appeals
Tenth Circuit.

Aug. 7, 1957.

Ned Warnock, Salt Lake City, Utah (George A. Critchlow and A. W. Watson, Salt Lake City, Utah, were with him on the brief), for appellant.

Fred H. Evans, Salt Lake City, Utah (of the firm of Gustin, Richards, Mattsson & Evans, Salt Lake City, Utah), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant sued appellee on two counts, both to recover a balance of $23,008.47 for labor and material furnished and services rendered by appellant for the use and benefit of appellee at its special instance and request. The first count is said to sound in express or implied-in-fact contract; the second in quasi contract as for unjust enrich-

ment. Point is made of inconsistencies of the two legal theories with the suggestion that a choice should have been required. But we are not concerned with the nicety of pleaded legal theories. It is enough that both counts, considered separately or together, state a claim on which relief can be granted, and we are therefore interested to know whether the proof supports either or both theories, whether inconsistent or not. Blazer v. Black, 10 Cir., 196 F.2d 139; Vrooman v. Beech Aircraft Corp., 10 Cir., 183 F.2d 479; Siegleman v. Cunard White Star Limited, 2 Cir., 221 F.2d 189.

The trial of the case to a jury resulted in a judgment on a general verdict in favor of the appellant for the sum of $9,000. The appellant has appealed only from so much of the judgment as disallows the remainder of the claim, the contention being that the proof was conclusive in its favor.

The basic facts are that the appellant, Western Machinery Company, who is engaged in engineering and constructing mills for concentrating minerals, was asked by appellee, Consolidated Uranium Mines, Inc., in June 1951, to do preliminary engineering work on a tungsten mill near Austin, Nevada. Pursuant to a letter agreement, Western did perform certain engineering services for which it has admittedly been paid. The appellee undertook to construct the mill with its own employees under its own management until August 10, 1954, when, in a telephone conversation, the President of Consolidated asked a representative of Western to undertake the completion of the mill. On the same date, Western's representative addressed a letter to Consolidated's President, confirming the telephone conversation and listing the points "discussed and approved verbally", among which were: "(2) All construction payroll accounts will be handled by W. K. E. [Western-Knapp Engineering Co.] (3) All materials and equipment other than that already purchased by Consolidated Uranium Company, including the Majuba Hills Equipment, will be purchased by

W. K. E. (4) The dismantling and moving of the Majuba Hills Mill will be handled by W. K. E. in addition to the construction work on the Linka Mill. (5) Prior to the 25th of each month, estimated expenditures for labor and materials for the next succeeding month will be submitted to you. You will forward this estimated amount to our San Francisco office prior to the first of the month." The expenditures for labor and materials were estimated to be $17,000 per month. The letter went on to state that appellant's manager and superintendent would arrive in Austin on the 16th to take charge of the construction work; that "if the above meets with your approval, and pending the drawing up of a formal agreement, will you please sign and return two copies of this letter to our San Francisco office." The letter was approved by Consolidated's President on August 12 and returned to Western. Without any other formal writings between the parties, Western proceeded with the supervision and direction of the construction work on the mill until about the middle of October, when Consolidated terminated the arrangement and took over the project.

Witnesses for Western testified that in the August 10 telephone conversation, it was agreed in effect that the construction of the mill by Western would be on a cost-plus-ten percent basis; and that the provision for the ten percent engineering fee was inadvertently left out of the hastily prepared letter. Consolidated's President could not recall any reference to the ten percent engineering fees in the telephone conversation. But, it is apparently agreed that Western did undertake the construction of the mill at Consolidated's instance and request, and that in the course of its operations, it expended for the account of Consolidated approximately $108,000 for labor and materials on the project. Western has admittedly been reimbursed for this entire amount, and while there is some intimation of inefficiencies, there is no proof that the

sums were not providently spent on the construction project at the mill site. There was also proof that in addition to the $108,000, Western was out of pocket $13,173.11 for off-the-job expenses, such as overhead (rents, utilities, etc.), engineering and draftsmen services necessarily incurred and evidenced by submitted invoices. This sum, together with the claimed ten percent engineering fee of $9,835.36 constitutes the proof in support of the claim.

Consolidated categorically denied that Western had not been paid for any of the expenditures properly chargeable to Consolidated, or that it had benefited in any way as a result of the services performed by Western on the project.

■ On this evidence and the issues thus framed, the jury was first given Consolidated's theory of the lawsuit to the effect that no contract was ever consummated, either express or implied. The court read to the jury that part of the August 10 letter containing the words, "Pending the drawing up of a formal agreement" and then told them that if the parties "contemplate all the while the reduction of their understanding, agreements, and stipulations to a formal written document, if that is what they intend and if they intend that no binding contract shall arise until that formal written document is executed, then there is no contractual obligation on the part of the defendant to pay the plaintiff anything"; and that it was for them to decide what the parties intended.

After the jury retired, Western excepted to the statement attributed to the court that "if the parties contemplate a formal written agreement then there is no contractual agreement." In the first place, the statement is incorrectly attributed to the court; and in the second place, the instructions of the court correctly stated the applicable law. See Farmers Equity Co-op Creamery Ass'n v. United States, 10 Cir., 132 F.2d 738; Nigro v. Conti, 319 Mass. 480, 66 N.E.2d

353, 165 A.L.R. 752; Annotation, 165 A.L.R. 756.

■ Western complains of the dismissal of its first cause of action and of the court's ruling that there was no written contract between the parties. The court did rule a written contract out of the case, and we think rightly so, for Western admits that the August 10 letter did not contain all of the agreement between the parties. Motter v. Patterson, 10 Cir., 68 F.2d 252; Thompson v. Star Farm Ins. Co., D.C., 145 F.Supp. 473; 12 Am.Jur. Contracts, § 23. But the court did not dismiss Western's cause of action based on contract. Instead, it instructed the jury that Western might recover on three different legal theories, depending upon their view of the true facts, towit: (1) an express contract; (2) a contract implied in fact; and (3) a quasi contract or obligation imposed by law. They were first told that they could find a binding express agreement between the parties from their written and spoken words. Specifically, they were permitted to find from the August 10 letter and from the telephone conversation an express agreement whereby Western would undertake the construction of the mill on a cost-plus ten percent basis, in which event it would be the duty of the jury to return a verdict for the amount of unreimbursed expenditures plus the ten percent fee.

■ Alternatively, the jury was told that it might find an implied-in-fact contract from all the facts and circumstances, including the written and spoken words and conduct of the parties; that in so doing, they must be able to reasonably infer a promise on the part of Consolidated to pay a reasonable price for the services performed by Western, and failing to so find, there could be no recovery upon contract. The jury was then instructed that even though there was no express promise to pay the out-of-pocket expenditures plus a ten percent fee, or an implied-in-fact promise to pay a reasonable sum for the services performed, Western could recover the reasonable value of the benefit received by Consolidated from the performance of the services by Western in its behalf. In that connection, the court explained that "if one party confers a benefit upon the other party under such circumstances that it would be unconscientious to permit the second party to retain the benefit without paying its reasonable value, then and in that case the first party is entitled to recover the reasonable value of that benefit, to prevent the second party's being unjustly enriched." In its brief, Western complains of the trial court's submission of this theory, but it made no such objection when the instruction was given. Indeed, in the trial of the case, it invited the court to embrace this theory as one of the propositions on which it was entitled to recover under the proffered proof.

■ Western complains of the refusal of the trial court to direct a verdict in its favor for $13,173.11 out-of-pocket-off-job expenditures and $9,835.36 fees on the grounds that there was no proof to the contrary. To be sure, the jury might very well have found an express cost-plus ten percent contract, in which event, however, it would seem that the verdict should have been for ten percent of the $108,000 admittedly expended on behalf of Consolidated at the job site, instead of the $9,835.36 claimed in the proof. It was within the province of the jury, however, to reject the proof of an express contract and to base its award on an implied-in-fact contract. In that event, Western cannot complain if the jury's verdict with respect to a reasonable fee approximates its proof in support of a fixed fee. It follows that whether the jury's verdict is based upon a reasonable fee under an implied-in-fact contract or the reasonable value of the benefits conferred under a quasi contract, it is cognizable in law and supported in fact. Martin v. Campanaro, 2 Cir., 156 F.2d

127 (see particularly footnote 5); Hill v. Waxberg, 9 Cir., 237 F.2d 936; 33 Harv.L.R. (1920) 376, 387; Williston on Contracts, Rev.Ed., § 3, p. 10; Restatement Restitution, § 107, comment (6).

█ Making application of these submitted legal theories to the evidence relating to the out-of-pocket-off-job expenses, it is enough to say that the evidence in that respect presented a question for the jury, which it conclusively resolved against Western.

█ After the jury retired, Western took exceptions to isolated statements of the court in its instructions. All of them are taken out of context and do not purport to state the grounds for the objections as contemplated by Rule 51 Fed.Rules Civ.Proc., 28 U.S.C.A. We have said too often to warrant repetition that an exception made in this manner does not comply with the plain mandate of the Rule and they will not be noted here. Solorio v. Atchison, T. & S. F. R. Co., 10 Cir., 224 F.2d 544; Allen v. Nelson Dodd Produce Co., 10 Cir., 207 F.2d 296; Jones v. K. O. M. A., Inc., 10 Cir., 218 F.2d 530, and cases cited.

Western says in effect that because of the manner in which the instructions were given, it was impossible to make proper objections or to request instructions. But, Rule 51 F.R.C.P. clearly contemplates that at the close of the evidence or some other propitious time a party may file request for instructions, and the court shall inform counsel of its proposed action thereon in order that counsel may be able to intelligently object to the instructions. And, we have said that it is reversible error for the court not to afford counsel this opportunity. Downie v. Powers, 10 Cir., 193 F.2d 760. The record here is barren of any suggestion that Western requested any instructions or at any time inquired of the court concerning its proposed instructions. The complaint comes too late here.

The judgment is affirmed.