Herbert and Jacqueline SIMON, husband and wife, d/b/a Little Nelchina Farms, Appellants,

v.

STATE of Alaska and Quality Asphalt Paving, Inc., Appellees.

No. S–8801.

Supreme Court of Alaska.

March 3, 2000.

Hal P. Gazaway, Hal P. Gazaway, P.C., Anchorage, for Appellants.

Ross A. Kopperud, Thomas M. Dillon, Assistant Attorneys General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

PER CURIAM.

I.  *INTRODUCTION*

Herbert and Jacqueline Simon, d/b/a Little Nelchina Farms, sued the State of Alaska, Department of Transportation and Public Facilities and its contractor, Quality Asphalt Paving, Inc., for damages that the defendants allegedly caused while rebuilding a strip of the Glenn Highway that crosses the Simons' property on an easement reserved for highway purposes.  The superior court granted partial summary judgment to the state, entering final judgment against the Simons on three counts relating to the state's use of lands within the highway easement. The Simons appeal that judgment.

## II. FACTS AND PROCEEDINGS

On August 10, 1949, Public Land Order (PLO) 601 withdrew public land in Alaska for the Glenn Highway. After the highway's completion, Congress enacted Public Law 892, providing for disposal of public lands within the original Alaska highway withdrawals "subject to appropriate easements" by the Secretary of the Interior.[1] In accordance with PL 892, the Department of the Interior issued PLO 1613, which revoked PLO 601's withdrawal of lands surrounding the Glenn Highway but reserved a 300-foot easement for highway purposes extending 150 feet from each side of the center line of the Glenn Highway. PLO 1613 further provided that lands within this easement "shall not be occupied or used for other than the highways ... except with the permission of the Secretary of the Interior or his delegate...."

At statehood, the federal government conveyed all rights and interest in Alaska's highway lands to the state.[2] In 1983 the federal government patented the land currently owned by the Simons to their predecessor, Calvin Gilcrease, who transferred it to the Simons in 1987. The patent reserved the highway easement that ran across it, as established by PLO 1613.

In 1995 the state decided to rebuild and improve the portion of the Glenn Highway running through the Simons' land; Quality Asphalt contracted with the state to perform the job. Quality Asphalt straightened and leveled the roadbed; in doing so it removed gravel, topsoil, and sod from certain areas and shifted them to other areas. All of these changes occurred within the 300-foot easement reserved by PLO 1613.

The Simons filed a superior court action against the state and Quality Asphalt, claiming that the construction project had damaged their land, their water supply, and their farming business. The Simons alleged breach of duty, trespass, waste, conversion, inverse condemnation, and various torts. They argued that the easement created by

PLO 1613 only allowed the state to improve the Glenn Highway within its existing roadbed and did not expressly allow it to expand or alter the course of the highway or to use or dispose of any subsurface materials.

The superior court rejected this argument. Finding PLO 1613's language ambiguous as to the precise scope of the easement, the superior court turned to this court's decision in *Andersen v. Edwards*.[3] In *Andersen* we held that an ambiguous highway easement allowed use of the designated right of way only to the extent reasonably necessary to serve the easement's intended purpose.[4] Relying on *Andersen*, the superior court ruled that as long as the state's changes were reasonably necessary to improve the Glenn Highway, PLO 1613 allowed it to relocate the highway anywhere within 150 feet of the centerline of the original roadbed and to use any subsurface materials in the rebuilding process. Finding undisputed evidence that the improvements were reasonably necessary, the court granted partial summary judgment to the state, dismissed three counts of the complaint that were affected by its ruling, and entered final judgment against the Simons under Alaska Civil Rule 54(b) as to those counts.

## III. DISCUSSION

The Simons appeal, contending that the superior court misinterpreted the scope of the state's easement. They insist that the easement did not allow the state to alter the highway's course or to move or use subsurface materials. We disagree.

The Simons do not dispute the superior court's finding that the scope of the PLO 1613 easement is ambiguous, but they contend that this ambiguity must be resolved in their favor. Their argument fails under *Andersen*, however, which makes reasonable necessity the applicable measure. The superior court's finding of reasonable necessity is not clearly erroneous. We adopt the superior court's analysis on this point and set forth

---

1. Pub.L. No. 892, 70 Stat. 898 (1956).

2. *See* Alaska Omnibus Act of June 25, 1959, Pub.L. No. 86–70, 73 Stat. 141, 145.

3. 625 P.2d 282 (Alaska 1981).

4. *Id.* at 286–87.

as an appendix the relevant portion of its decision.[5]

## IV. CONCLUSION

We therefore AFFIRM the judgment.

### A P P E N D I X[1]

### IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### THIRD JUDICIAL DISTRICT AT ANCHORAGE

Herbert and Jacqueline Simon,

Husband and Wife, d/b/a Little

Nelchina Farm,

    Plaintiffs,

v.

STATE OF ALASKA, and QUALITY

ASPHALT PAVING, INC.,

    Defendants.

### CASE NO. 3AN–95–7554 CI
### DECISION

The issue here is, does the easement provided by PLO 1613 provide the State with the right to use or discard subsurface materials within the easement for the reconstruction of the Glenn Highway or to lower the elevation of the highway. Determination of this issue depends upon whether PLO 1613 contains express or ambiguous terms.

While the Alaska Supreme Court has not faced the discrete issue before this court, it has reached determinations which provide this court with guidance. It has held that, as a general rule, where specific parameters of an easement have been expressly set forth, such as width and length, "the easement is specific and definite," and its terms control. *Andersen,* 625 P.2d at 286, (quoting *Aladdin Petroleum Corp. v. Gold Crown Properties,* [221 Kan. 579] 561 P.2d 818, 822 (Kan.1977)). Conversely, where the terms of the easement are ambiguous, then the holder of the easement is only entitled to use the property within reason. *Andersen,* 625 P.2d at 286–87.[2]

The meanings of the phrases "for highway purposes" and, more particularly, "over and across" are relevant to this analysis. Neither the plaintiffs nor the defendants believe the terms of PLO 1613 are ambiguous. Rather, each group believes that the relevant terms expressly support their respective positions.

For instance, the plaintiffs argue that "over and across" means that the easement was limited to the right to repair or widen the existing road, but not to alter the subsurface in any significant way.[3] Thus, the plaintiffs argue, the easement does not give the State the right to lower the elevation of the road 20 or 30 feet or to extract plaintiffs' gravel. Plaintiffs cite no authority in support of their assertion.

Conversely, defendants argue that, when read in context, the phrase "over and across" does not limit the easement to a surface easement only. The context within which the defendants interpret the phrase is: the

---

**5.** Since the Simons do not dispute the superior court's finding of ambiguity, we assume the finding to be correct for purposes of this decision. But we note that it is arguable that PLO 1613 unambiguously allows the state to use the entire right of way and all surface and subsurface materials within its limits for purposes of rebuilding the Glenn Highway. *See Myers v. United States,* 180 Ct.Cl. 521, 378 F.2d 696, 700 (1967) (barring owners of land subject to a similar easement from recovering damages for a rebuilding project's alteration of the Wasilla–Big Lake Road's original course and for the project's use of subsurface gravel). Absent ambiguity, the *Andersen* reasonable-necessity standard would not apply.

**1.** We have edited the superior court's decision to conform to our technical rules.

**2.** As plaintiffs note, the purpose of this doctrine is "to avoid needless destruction of property by insuring the construction of a roadway to be accomplished with care." *See* Memorandum at 3, (citing *Andersen,* 625 P.2d at 287).

**3.** Plaintiffs also say that PLO 1613 was intended only to protect the Glenn Highway as it existed in 1958, when the PLO was issued. Reply at 3. This assertion is unpersuasive, though, since plaintiffs also admit that the state could have widened the Glenn Highway pursuant to the easement, which would have extended the highway beyond its 1958 parameters. Reply at 4.

phrase does not expressly prohibit the State from taking subsurface materials; there is no manifest intention within the language of the easement; and other jurisdictions have found that similar easements include the right to subsurface materials for the purpose of road building. Accordingly, the defendants argue, PLO 1613 necessarily includes the right of the State to use subsurface materials and to alter the road's elevation for the purpose of the highway.[4]

In *Andersen,* the court was asked to interpret AS 19.10.010, which provides the State in certain places with a right of way 100 feet wide for use as public highways. The language of AS 19.10.010 is similar to that of PLO 1613.[5] In *Andersen,* the court found that, although the statute provided for a specific right-of-way, 100 feet on either side of the center line, the term "width" was ambiguous. The court reasoned that, the express terms of the statute suggest that the legislature intended that only that amount of area within the express easement which was necessary for use as public highways be dedicated. *Andersen,* 625 P.2d at 286–87. Since the court found that the relevant term, "width," was ambiguous, it applied the reasonable use analysis. *Id.* at 287.

I find that the term "over and across" set forth in PLO 1613 is no more clear than the term "width" is in AS 19.10.010. The use of the term "for highway purposes" suggests that the intent of the federal government when it drafted PLO 1613 was that the easement provide more than just the right to repair or widen the existing road.[6] Accord-

ingly, I find that the terms of PLO 1613 are ambiguous so that the State is entitled to reasonable use of the property.

### *Was the State's use of the property reasonable?*

Courts consistently find that an easement gives the holder the right to use the land to the extent necessary to serve the purpose of the easement. *Id.* at 285–87 (finding that it was not reasonable for the developer to clear the full 100 foot width of easement when he didn't need to in order to construct the roadway); *Buhl v. U.S. Sprint Communications Co.,* 840 S.W.2d 904, 909 (Tenn.1992), (citing *Railway Co. v. Telford's Executors,* [89 Tenn. 293] 14 S.W. 776 (1890) (finding that the rights of one having an easement in the lands of another are measured and defined by the purpose and character of the easement), (citing *Kansas Central Railway Co. v. Allen,* 22 Kan. 285 (1879) (a railroad easement gives the holder the right to use as much of the property above and below the surface as may be needed)); *see also Energy Transp. Sys., Inc. v. Union Pac. R. Co.,* 606 F.2d 934, 938 (10th Cir.1979), (citing *Energy Transp. Sys., Inc. v. Union Pac. R.R. Co.,* 456 F.Supp. 154, 162–63 (1978)).

This right includes the right to use the subsurface land or materials to the extent necessary for the purpose of the easement. *Energy Transp. Sys.,* 456 F.Supp. at 162–63 (finding that the fee owner could make use of or convey the land below the surface of the area subject to the railroad's easement only if it didn't interfere with the construction, maintenance or operation of the railroad);

---

4. Alternatively, defendants argue that, even if the term is ambiguous, the only reasonable and logical meaning to give to it is that proffered by the defendants. Plaintiffs reply that such a clause should not be construed broadly, to give the easement holder additional rights. But, the case upon which plaintiffs rely is inapposite. In *McDonald v. Board of Mississippi Levee Comm'n,* 646 F.Supp. 449, 465–66 (N.D.Miss.1986), the court held that an easement "to build and repair" a levee did not divest the property owner of his interest in the land, including the right to graze cattle in the easement area. Here, the state is not seeking rights beyond those necessary to reconstruct the Glenn Highway.

5. AS 19.10.010 provides, "[a] tract [of land] 100 feet wide between each section of land owned by the state, or acquired from the state, and a tract four rods wide between all other sections in the state, is dedicated for use as public highways. The section line is the center of the dedicated right-of-way. If the highway is vacated, title to the strip inures to the owner of the tract of which it formed a part by the original survey."

6. Notably, the phrase "for highway purposes" in PLO 1613 is very similar to the phrase "for use as public highways" in [AS] 19.10.010. New construction is clearly permissible under the right of way set forth in AS 19.10.010. *See Andersen,* 625 P.2d at 285.

*Buhl,* 840 S.W.2d at 909–11 (finding that the easement did not extend rights to subsurface materials beyond those necessary for the construction, maintenance, or operation of the railroad so that the railroad could not agree to grant rights to the subsurface area to another for a use inconsistent with the above purposes).

I find that lowering the elevation of a road and using or disposing of excavated materials [is] necessary for the purpose of the easement, in this case, constructing à highway over and across the easement. Indeed, I find that it would defeat the purpose of this easement to say that it gives no right to use of the subsurface materials to maintain and improve the road. To do so would disable the State from reasonable use of the easement.

For these reasons, I conclude that the State acted within its rights set forth in PLO 1613. Accordingly, this court need not reach plaintiffs['] alternate theory of relief, based upon the statute of limitations set forth in AS 09.10.230.[7]

IT IS SO ORDERED this 8th day of June, 1998.

/s/

SEN K. TAN

Superior Court Judge

---

7. Citing AS 09.10.230, which provides a 10–year statute of limitations for bringing actions to cancel or annul a patent, the plaintiffs assert that the defendants are time-barred from attempting to amend or vacate the patent rights of the Simons'. Since the defendants have not moved to amend or vacate patent rights of the Simons', and since they would not need to in light of this court's ruling, this argument need not be addressed.