Jeffrey **LABRENZ**, Appellant,

v.

Shane **BURNETT** and Jill Burnett, Appellees.

No. S–12770.

Supreme Court of Alaska.

Oct. 16, 2009.

Rehearing Denied Nov. 20, 2009.

---

**31.** 893 P.2d at 1250.

Robert A. Sparks, Law Office of Robert A. Sparks, Fairbanks, for Appellant.

William R. Satterberg, Jr., Law Offices of William R. Satterberg, Jr., Fairbanks, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

## OPINION

FABE, Chief Justice.

### I. INTRODUCTION

This appeal addresses a dispute between Jeffrey Labrenz and Shane and Jill Burnett over the use of land described in an easement. Labrenz has a driveway easement over the Burnetts' land, and in building his driveway, Labrenz installed decorative rocks, shrubs, trees, a fence, and a gate on the Burnetts' property. The superior court agreed with Labrenz that the slope of the Burnetts' land necessitated certain efforts to control erosion, but it found that many of Labrenz's improvements to the driveway easement were cosmetic in nature and ordered that they be removed. In addition, the superior court ordered Labrenz to move the fence and gate onto his own property. The superior court also permitted the Burnetts to use the easement to build a driveway to access the lower portion of their lot.

On appeal, Labrenz challenges the superior court's findings of fact as clearly erroneous and argues that his easement improvements were allowed under theories of contract and estoppel. He also contends that all of his improvements were reasonably necessary to protect his driveway from erosion and vandals. Because the evidence at trial supported the superior court's findings and the superior court's legal conclusions were not erroneous, we affirm the superior court's decision in all respects.

## II. FACTS AND PROCEEDINGS

### A. Facts

Jeffrey Labrenz and Shane and Jill Burnett own adjacent lots in the Sherwood Forrest Subdivision on Chena Ridge in Fairbanks. Lot 13A is owned by Labrenz, who also has an access easement over the lower portion of Lot 14A, owned by the Burnetts. Before the Burnetts owned Lot 14A, it was owned by Jeremy Riddle. The initial easement over Lot 14A was a thirty-foot-wide strip that was positioned during development of the subdivision by driving a bulldozer "along a path that was estimated, by eye, to be adequate for automobiles" to access Labrenz's property, Lot 13A.

Labrenz installed a driveway across Lot 14A to his property, and in the process, excavated outside of the driveway easement boundaries on Lot 14A. After it became apparent that Labrenz had over-excavated his easement, he and Riddle agreed on a replat of their adjoining lots, which was completed on May 4, 2004. Labrenz gave up a small portion of his lot in order to enlarge the easement area. In May 2004 Riddle sold Lot 14A to the Burnetts.

In addition to excavating his driveway easement in a manner that provided erosion controls, Labrenz landscaped it with light-colored rocks, shrubs, and spruce trees. Labrenz also placed a wire fence and gate on the easement, with a portion of the fence extending outside the easement on the Burnetts' property. The Burnetts objected to Labrenz's landscaping choices and the placement of the fence and gate on their property and requested that they be removed. Labrenz refused and replaced the wire fence with a white vinyl fence after he was sued by the Burnetts.

### B. Proceedings

In June 2005 Shane Burnett filed suit against Labrenz, claiming that Labrenz had made use of the Burnetts' land in excess of Labrenz's rights under the easement. Specifically, Burnett alleged that Labrenz had trespassed on the Burnetts' property by making use of a wider strip of land than the easement allowed and "wasting the property." In August 2005 Burnett requested that the superior court issue an order requiring the removal of the improvements that Labrenz had made to the easement and enjoining Labrenz from making any further improvements. In late October 2005, the superior court denied Burnett's motion for a preliminary injunction requiring removal of the improvements. Jill Burnett was added as a plaintiff in December of that year. In March 2006 the superior court ruled that the Burnetts could only assert claims that had been available to Riddle, the former owner who originally granted the easement to Labrenz.

The case went to trial on October 26, 2006. Labrenz argued that all of the landscaping was necessary to protect his driveway from erosion. He also claimed that the fence and gate were necessary to protect his driveway from vandalism by snow-machiners and four-wheelers who might come on the property and destroy the driveway. The Burnetts argued that Labrenz had landscaped the easement area of Lot 14A to match Labrenz's own landscaping so that it would look like Labrenz's property and contended that the light-colored rocks and shrubs were decorative in nature. The Burnetts further maintained that to the extent the rocks and plants protected against erosion, other less obtrusive options such as "hardy grass" were available. Riddle testified that he had never approved Labrenz's rocks and shrubs and that he believed Labrenz's gate and fence were temporary. The surveyor of the replat testified that the purpose of the replat was to accommodate the improvements Labrenz had installed on the easement.

At the conclusion of the trial, the superior court made oral findings, determining that while "there has got to be some erosion control" to prevent against runoff, the light-colored rocks bordering the driveway were "more for the decorative beauty of the landscaping." Though the superior court acknowledged that the threat of erosion presented a "serious issue," it found that the threat of vandalism was not "a realistic problem" and ordered the fence and gate to be moved onto Labrenz's property. It took under advisement the question whether the

rocks and shrubs would have to be removed and replaced with other plantings to control erosion.

The superior court issued supplemental written findings and concluded that the rocks, shrubs, and trees were primarily decorative in nature and that the nature of the landscaping was not reasonable or necessary under the circumstances. The superior court ordered Labrenz to remove the shrubs, after which the Burnetts could landscape the easement "as they see fit." The superior court confirmed its earlier ruling that the fence and gate were to be moved onto Labrenz's property. Finally, the superior court ruled that the Burnetts would be permitted to use Labrenz's easement to access their own property, though the superior court warned that should the Burnetts damage Labrenz's driveway in developing their own access, they would be fully responsible for the damage.

Labrenz requested a new trial and clarification of the superior court's decision, as well as a stay of its order. The superior court denied both Labrenz's motion for a stay of judgment and his request for a new trial, but it issued a supplemental order addressing his request for clarification. It explained that improvements within the easement area must be reasonably related to the easement's purpose—that of a driveway. The superior court found that the decorative rocks, decorative shrubs, gate, and fencing placed on the easement were not reasonably related to the essential functions of the driveway and thus should be removed. Labrenz appeals.

## III. STANDARD OF REVIEW

■ We review the superior court's factual findings under the clearly erroneous standard and will disturb those findings only "when we are left with a definite and firm conviction on the entire record that a mistake has been made."[1] We review the superior court's legal conclusions de novo.[2]

## IV. DISCUSSION

### A. The Superior Court Did Not Err in Finding That There Was No Express or Implied Contractual Agreement To Allow Labrenz's Rocks, Shrubs, Gate, and Fence.

■ Labrenz first argues that the superior court's findings are clearly erroneous "because the Burnetts are bound by the agreement reached between Labrenz and [Riddle] ... to expand the driveway easement to protect [Labrenz's] improvements." The parties stipulated to the admission of a written statement from the surveyor who conducted the replat of Lots 13A and 14A, rather than calling him as a witness. Labrenz relies on the surveyor's proffered testimony that

Mr. Riddle knew of Mr. Labrenz's gate/ fence, plantings, rock and improvements in the ... easement area and the purpose of the agreement for the replat was to accommodate the improvements that [Labrenz] had installed in the access easement area; and that [Labrenz] paid for part of the replat costs.

Labrenz argues that this testimony conclusively "establishes that Riddle knew of [Labrenz's] improvements in the easement" and "that a purpose of the agreement between Riddle and [Labrenz] for the replat was to accommodate or protect the improvements that [Labrenz] had installed in the access easement area." Yet as the Burnetts persuasively argue, the "intent of the parties regarding the extent of protection granted by the replat can best be determined by the testimony" of Riddle and Labrenz. The Burnetts concede that at the time of the replat, Riddle knew of Labrenz's improvements in the easement, but they highlight Riddle's testimony that he believed that Labrenz's gate and fence were temporary and that he never gave Labrenz approval for the rocks and shrubs.

Labrenz maintains that by entering into a stipulation that the superior court could consider the surveyor's written statement, the Burnetts "removed the trial court's ability to

1. *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979).

2. *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 989 (Alaska 2002).

assess demeanor and determine credibility and they should be bound by their stipulation." But an exchange at trial reveals that the stipulation reflected only an agreement as to what the surveyor would say if called to the stand. When questioned by the superior court about admitting the surveyor's written statement by stipulation, the Burnetts' attorney responded, "obviously we'll argue [but] we are acknowledging that [is] his testimony."

The superior court heard evidence that the replat was not intended to approve all of Labrenz's improvements to the easement. Riddle testified that he had never approved Labrenz's rocks and shrubs and that he knew of Labrenz's gate and fence but believed that they were temporary. Thus the superior court's finding that there was no express agreement to allow Labrenz's decorative improvements, gate, and fence was not clearly erroneous.

■■■ Labrenz also argues that the replat amounted to an implied contract to protect his easement improvements. Labrenz relies on *Cluff v. Nana–Marriott*, in which we recognized that "[t]he existence of an implied contract must be determined by considering all the factors in light of the surrounding circumstances." [3] Labrenz argues that "the actions of the parties ... clearly demonstrate[ ] that the purpose of the replat was to protect the improvements installed in the easement." He also points to the fact that Riddle "never objected to any of [the] improvements, including the ditch-rock or shrubs." But under Alaska law, an implied contract "exists only when there is mutual assent between parties." [4] As we have observed, an implied contract "arises where the court finds from the surrounding facts and circumstances that the parties intended to make a contract but failed to articulate their promises." [5] In such a case, "the court merely implies what it feels the parties really

intended." [6] Although Labrenz testified that he "assumed that he paid for the replat for the expansion of the driveway easement to protect all of his improvements," the superior court also heard testimony from Riddle explaining his understanding that Labrenz's gate and fence were temporary and that he never gave Labrenz approval for the rocks and shrubs. Given the conflict in the evidence regarding the intent of the parties, the superior court did not err in declining to find an implied contract between Labrenz and Riddle to protect all of Labrenz's improvements to the driveway easement.

## B. The Superior Court Did Not Err When It Refused To Apply the Doctrine of Estoppel Against the Burnetts.

■■■ Labrenz next argues that the superior court's findings are inadequate "because they fail to [include] any findings concerning Labrenz's position that [the] Burnetts['] proposed actions were barred by quasi or equitable estoppel." Labrenz contends that the doctrine of quasi or equitable estoppel should be applied against the Burnetts because Riddle's failure "to object to the improvements he admit[ted] he knew were installed in the easement" created a situation where Labrenz "reasonably believe[d] that the replat was being performed to protect [his] improvements." Labrenz claims that he reasonably relied on "Riddle's silence and lack of objection" to his detriment and that he "paid thousands of dollars for a replat that [he] reasonably believed was intended to protect his improvements."

■■■ Quasi estoppel "precludes a party from taking a position inconsistent with one he has previously taken where circumstances render assertion of the second position unconscionable," [7] while "[e]quitable estoppel results from an assertion of a position, expressly or by implication, which is reasonably

**3.** 892 P.2d 164, 171 (Alaska 1965).

**4.** *Altman v. Alaska Truss & Mfg. Co.,* 677 P.2d 1215, 1226 (Alaska 1983).

**5.** *Martens v. Metzgar,* 524 P.2d 666, 672 (Alaska 1974) (quoting *Hill v. Waxberg,* 237 F.2d 936, 939 (9th Cir.1956)).

**6.** *Id.* (quoting *Hill,* 237 F.2d at 937).

**7.** *Dressel v. Weeks,* 779 P.2d 324, 329 (Alaska 1989) (alteration and internal quotation marks omitted).

relied on by the opposing party to his detriment."[8] As discussed above, the superior court heard testimony from Riddle that he believed that Labrenz's gate and fence were temporary and that he never gave Labrenz approval for the rocks and shrubs. And as the Burnetts point out, the purpose of the replat "was not to allow Labrenz to landscape [the] Burnett[s'] property to Labrenz's liking, but was rather to cure a previously unauthorized encroachment onto [the] Burnett[s'] property." Thus, the superior court did not err when it declined to rule that the Burnetts' requested relief was barred by the doctrine of quasi or equitable estoppel.

### C. The Superior Court Did Not Err in Finding That Some of Labrenz's Easement Improvements Were Not Reasonable and Necessary To Protect Labrenz's Driveway.

The superior court recognized the steep nature of the land in question and found that reasonable use of Labrenz's easement could include back-sloping to aid in channeling water and runoff, as well as installation of minimal rocks or plants to achieve additional water control. But the superior court found that the light-colored landscaping rocks, decorative shrubs, and white vinyl fence were not a reasonable use of the easement on the Burnetts' land. The superior court found that the primary purpose of the rocks and shrubs was decorative and that less intrusive means were available to help with erosion prevention. Labrenz challenges the superior court's factual findings that some of his improvements were not reasonable and necessary to protect the driveway.

### 1. The superior court's oral findings did not contradict its written findings.

■ Labrenz first argues that the superior court's findings are clearly erroneous because its "oral findings directly contradict [its] written findings." But a review of the superior court's oral and written findings reveals that they are not contradictory. The superior court made oral findings at the con-

clusion of the trial, recognizing that although Labrenz was responsible for "some really excellent landscaping" and "there has got to be some erosion control," the rocks placed by Labrenz along the driveway's border "may not have runoff implications" and were "more for the decorative beauty of the landscaping." The superior court then indicated that it was not yet prepared to require the removal of the rocks and shrubs and that it "want[ed] to think about that a little more."

In its written findings, the superior court again recognized the steep nature of the land in question and found that reasonable use of Labrenz's easement could include back-sloping to aid in channeling water and runoff, as well as installation of some rock and plantings for water control purposes. But the superior court found that installing light-colored landscaping rocks, decorative shrubs, and white vinyl fence was not a reasonable use of the easement on the Burnetts' land because they were primarily decorative in nature. The superior court's written findings thus did not contradict but rather supplemented its oral findings and explained them in more detail.

### 2. The superior court's findings that some of Labrenz's improvements were primarily decorative in nature and thus not reasonable and necessary to the easement were supported by the evidence.

■ Labrenz next argues that the superior court erred because it ordered the removal of the rocks and shrubbery as primarily decorative despite its finding "that the rock and shrubs are a reasonable manner of erosion control." Labrenz relies on our decision in *Simon v. State*, where we considered a landowner's challenge to the State's relocation of a highway within a right-of-way.[9] We concluded that as long as the State's changes were reasonably necessary to improve the highway, the statutory easement allowed the State to relocate the highway anywhere within 150 feet of the centerline of the original

---

8. *Krize v. Krize*, 145 P.3d 481, 486 n. 19 (Alaska 2006) (internal quotation marks omitted).

9. 996 P.2d 1211, 1212 (Alaska 2000).

roadway.[10] Pointing to his own testimony that the purpose of the rocks and shrubs installed was to prevent erosion, Labrenz argues that like the improvements in *Simon*, his improvements were reasonably necessary.

■ Yet a careful reading of the case cited by Labrenz reveals that his improvements to the driveway easement are not supported by our decisions. Where specific parameters, including the length and width of an easement have been expressly set forth, "the easement is specific and definite." [11] In such a case "[t]he expressed terms of the grant or reservation are controlling ... and consideration of what may be necessary or reasonable to the present use of the dominant estate are not controlling." [12] The plain meaning of the subdivision map of the property unambiguously describes the original thirty-foot easement, and the plain language of the replat states that it is "for [a] driveway to Lot 13A." But there are no provisions in the replat for a permanent fence, a permanent gate, or other improvements that are not necessary to the existence of a driveway.[13]

As the holder of the easement, Labrenz "may make unlimited reasonable use of the easement." [14] But Labrenz is only entitled to use the Burnetts' property "in a manner that is reasonably necessary for the convenient enjoyment of the servitude," [15] or, as the superior court framed the issue, to make "improvements within the easement area [that are] reasonably related to the easement purpose: that of a driveway."

Labrenz claims that the "Burnetts' objections that the improvements make the property look like it is part of [Labrenz's] lot, without any evidence showing the improvements are unnecessary or unreasonable, cannot trump reasonable necessity." Given the steep nature of the land, it was reasonable for Labrenz to include features to control the threat of erosion.[16] But Labrenz was not entitled to interfere unreasonably with the Burnetts' enjoyment of their own property.[17] As the Restatement recognizes, in determining "what constitutes unreasonable interference with the enjoyment of the servient estate, aesthetic considerations may be relevant." [18]

The superior court heard evidence showing that certain aspects of Labrenz's landscaping were decorative in nature and thus not "reasonably related to the essential functions of [Labrenz's] driveway." Labrenz claimed that the rocks and shrubs on his driveway were necessary to prevent erosion. Yet Shane Burnett testified that other houses in the neighborhood use grass to control erosion on hillsides steeper than the property in question, and the superior court also heard testimony by Riddle that erosion on the hillside could be controlled using grasses. Thus, the superior court did not err in finding that some of Labrenz's easement improvements were not reasonable and necessary to protect Labrenz's driveway.

10. *Id.* at 1213.

11. *Andersen v. Edwards*, 625 P.2d 282, 286 (Alaska 1981) (internal quotation marks omitted).

12. *Id.* (internal quotation marks omitted).

13. *See Kennedy v. Bodi*, Mem. Op. & J. No. 3934, 1991 WL 11657237, at *3 (Alaska, July 17, 1991) ("Because we find that the plain language of Plat 85–40 does not contemplate use of the easement for an above-ground cable such as the Bodis', we believe that the cable constitutes an unreasonable use of the easement.").

14. *Id.* at *2 (citing *Andersen*, 625 P.2d at 286).

15. RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 (2000).

16. *See id.* § 4.10 cmt. d ("The first step in determining whether the holder of an easement is entitled to make a particular use challenged by the owner of the servient estate is to determine whether the use falls within the purposes for which the servitude was created.").

17. *See id.* § 4.10 cmt. h ("[T]he easement holder may not use it in such a way as to interfere unreasonably with enjoyment of the servient estate. What constitutes unreasonable interference will depend largely on the circumstances, particularly the purpose for which the servitude was created and the use of the servient estate made or reasonably contemplated at the time the easement was created.").

18. *Id.*

**3. The superior court did not fail to sufficiently explain its reasoning as required by Alaska Civil Rule 52.**

██ Labrenz also challenges the findings on the ground that the superior court did not explain its reasoning sufficiently as required by Alaska Civil Rule 52. In *Sullivan v. Subramanian* we explained the superior court's duty under Rule 52(a):

> [T]he trial court had a duty ... to find the facts specially and state separately its conclusions of law thereon. This rule required the court to deal adequately with and state with clarity what it finds as facts and what it holds as conclusions of law. The findings and conclusions should be so clear and explicit as to give the Supreme Court a clear understanding of the basis for the decision made.[19]

In this case, the superior court's findings are quite detailed and allow for meaningful appellate review. The superior court did not disregard Labrenz's testimony as Labrenz claims but rather did not agree with Labrenz's version of events or his legal arguments. For example, the superior court found that it was not Riddle's intent to approve all of Labrenz's improvements and subsequently bind the Burnetts, relying on Riddle's testimony that he only became aware of Labrenz's improvements after they were completed, that he believed that Labrenz's gate and fence were temporary, and that he never gave Labrenz approval for the rocks and shrubs. In addition, the superior court found that the rocks and shrubs were decorative in nature and not reasonably necessary for the easement purpose after it heard the testimony of the Burnetts and Riddle and conducted a site visit. The superior court's written order provides citations to the trial transcript after each of its findings. The findings of the superior court also addressed and resolved all critical issues and claims of the case and are therefore sufficiently detailed under Civil Rule 52(a).

**4. The superior court's finding that there was not a significant threat of vandalism to Labrenz's property is supported by the testimony at trial.**

██ In finding that Labrenz must move his gate and fence off of the Burnetts' property, the superior court acknowledged that there is "always that risk" of damage from vandals and that Labrenz's desire to protect his property was understandable. Yet the superior court found that Labrenz could effectively protect his property simply by moving the gate to his property line.

Labrenz argues that the superior court's finding that there is no current risk of vandalism that would justify Labrenz's fence and gate on the Burnetts' property as being reasonably necessary is clearly erroneous because the finding "[was] not based on evidence admitted at the trial." Labrenz claims that the superior court based its finding on "personal knowledge of the character and history of the subdivision" and that this "undisclosed prior knowledge of the character of the area in question" calls its conclusions into question. Labrenz also contends that the superior court's finding is "contrary to the evidence admitted at trial," including Labrenz's own testimony that he observed damage left by trespassers and that neighbors had called to warn him about vandals on snow-machines and four-wheelers.

In its findings, the superior court addressed Labrenz's concerns about vandals and noted that previous vandalism had been in a lower area of the subdivision. But the trial court also noted a decline in the use of motorized vehicles in the area. Any knowledge that the superior court had of the area was not dispositive as other witnesses testified that there had not been any problems with trespassers vandalizing the property in the past. Thus, the superior court's findings were not "contrary to the evidence admitted at trial"; rather the superior court was simply not persuaded by Labrenz's testimony.

---

**19.** 2 P.3d 66, 69 (Alaska 2000) (internal quotation marks omitted). In *Mapco Express, Inc. v. Faulk*, 24 P.3d 531, 538–39 (Alaska 2001), we remarked that "[t]wo major principles emerge from our past decisions concerning Civil Rule 52(a). A trial court's findings are sufficiently 'clear and explicit' if they (i) allow for meaningful appellate review and (ii) resolve all critical issues and disputes between the parties."

### D. The Superior Court Did Not Err in Finding That the Burnetts Are Allowed To Use the Easement To Access the Bottom Part of Their Property.

 The superior court found that the Burnetts have a right to make reasonable use of the driveway easement on their land. Labrenz argues that the superior court failed to address whether the Burnetts' plan "to construct a new driveway[] is reasonable under the circumstances." Labrenz also argues that the "Burnetts' construction of a new driveway into lot 14A through the easement is a violation of the [replat] agreement between Labrenz and Riddle." Yet the Burnetts persuasively argue that their construction of a new driveway to access the lower portion of their lot is not a violation of the replat agreement because "nothing in the replat revokes [their] right to access their property, including the easement." Furthermore, "[t]he owner of the servient estate may utilize the easement area in any manner and for any purpose that does not unreasonably interfere with the rights of the easement holder." [20]

The superior court heard testimony from Shane Burnett that he would like to access the lower portion of his lot but that the slope of the land makes it difficult to reach the lower portion from his existing driveway. The superior court also heard testimony and visited the property, and it determined that the Burnetts' plan for a second driveway to access a different part of their lot was reasonable and was not precluded by the replat agreement.[21] Its findings are not clearly erroneous.

### E. The Superior Court Showed No Bias Against Labrenz.

After the superior court issued its supplemental written findings in May 2007, Labrenz requested a new trial and sought clarification of the superior court's decision. The superior court then issued a supplemental order regarding Labrenz's request for clarification, stating:

> [Labrenz's] own unreasonable stance has led him to this situation. Despite being given a practical and equitable opportunity to remove and salvage the plants and landscaping materials at issue, he chose to continue flogging the poor expired beast before this court. [Labrenz's] energies would be better put to use in determining how he might best reuse the materials previously consigned to this driveway, rather than besting [the Burnetts].

 Labrenz claims that the superior court "expressed animosity" toward him, "demonstrat[ing a] deep commitment to the Burnetts' view of the facts." Labrenz also characterizes the superior court's remarks as an "unjustifiable, angry diatribe." Labrenz cites to the Alaska Code of Judicial Conduct [22] and *Ogden v. Ogden*, where we remarked that appearance of impropriety is defined "by an objective standard—one that asks not whether a judicial officer displayed actual bias but whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." [23] But as we have repeatedly cautioned, "judicial bias should not be inferred merely from adverse rulings." [24] The record does not reveal any

---

20. JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 8.20, at 8–60 (2009); *accord* 7 THOMPSON ON REAL PROPERTY § 60.04(b)(1) (David A. Thomas ed., 2d ed.2006).

21. The superior court instructed the Burnetts that if they develop a driveway that uses Labrenz's easement, they will be responsible for ensuring that the development reasonably protects Labrenz's driveway. The Burnetts concede that should they choose to develop their new driveway "in a manner outside of the court's instructions, Labrenz would then have a possible unreasonable interference or waste claim."

22. Alaska Code of Judicial Conduct Canon 2(A) states that "[i]n all activities, a judge shall ... avoid impropriety and the appearance of impropriety, and act in a manner that promotes public confidence in the integrity and the impartiality of the judiciary."

23. 39 P.3d 513, 516 (Alaska 2001) (emphasis and internal quotation marks omitted).

24. *Tillmon v. Tillmon*, 189 P.3d 1022, 1027 n. 13 (Alaska 2008); *see also DeNardo v. Maassen*, 200 P.3d 305, 311 (Alaska 2009) ("Our past holdings demonstrate that neither interpretations of the

improper actions or bias on the part of the superior court that would require us to remand the case to a different judge as Labrenz requests.

## V. CONCLUSION

Because a number of Labrenz's easement improvements were not reasonably necessary to protect his driveway from erosion and vandals and because the Burnetts are legally entitled to use the easement on their property, we AFFIRM the judgment of the superior court in all respects.

law nor adverse rulings alone are sufficient to require recusal." (footnotes omitted)); *Wasserman v. Bartholomew*, 38 P.3d 1162, 1171 (Alaska 2002) ("Disqualification was never intended to enable a discontented litigant to oust a judge because of adverse rulings made." (internal quotation marks omitted)); *Pride v. Harris*, 882 P.2d 381, 385 (Alaska 1994) ("Indeed, every judge, when he hears a case or writes an opinion must form an opinion on the merits and often an opinion relative to the parties involved. But this does not mean that the judge has a personal bias or prejudice." (alterations and internal quotation marks omitted)).