Tom COBURN, Appellant,

v.

Sarah BURTON, Appellee.

No. S–2539.

Supreme Court of Alaska.

April 27, 1990.

Paul W. Waggoner, Anchorage, for appellant.

Gregory J. Grebe, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON, and MOORE, JJ.

RABINOWITZ, Justice.

Sarah Burton broke her ankle when she slipped on ice in front of a four-plex owned by Tom Coburn. The jury determined that Burton's injury was caused by Coburn's negligence and awarded Burton $35,709 in damages. This appeal followed.

## I. FACTS AND PROCEEDINGS.

Sarah Burton slipped on ice in a driveway in front of a four-plex owned by Tom Coburn. The driveway extended the length

of the two-story four-plex, whose four units stand side by side. Burton had just left the home of her friend, Diane McMillan, tenant of the northernmost unit. Burton slipped in an area between McMillan's window and the front end of Burton's parked car.

Coburn, the landlord, attempted to present evidence to the jury that his tenant, McMillan, was responsible for clearing the driveway of snow. Specifically, Coburn sought to introduce into evidence a lease between McMillan and himself which contained a provision in paragraph twenty-four which states: "Snow removal from Lessee's sidewalks and driveway is the responsibility of the Lessee."

The superior court ruled that the lease provision was inadmissible because it was invalid under Alaska's Uniform Residential Landlord and Tenant Act (URLTA), AS 34.-03.010–.380. In so ruling the superior court relied on AS 34.03.100(d)(1), which provides that a landlord delegating "maintenance tasks" to the tenant may do so only by executing a separate, signed writing independent of the lease, supported by "adequate consideration." Since neither of these conditions was satisfied, the superior court concluded that paragraph twenty-four of the lease could not be received in evidence. The superior court also ruled that neither evidence nor proposed jury instructions indicating that McMillan had a duty to clear the snow from the portion of the driveway in front of her unit could be presented to the jury. This ruling, too, was predicated on the court's interpretation of URLTA. The court ruled that AS 34.-03.100(a)(2), which provides that "The landlord shall ... (2) keep all common areas of the premises in a clean and safe condition," imposed the duty on Coburn of keeping the driveway free of snow.

The superior court gave the following instruction concerning Coburn's duty of care:

A landowner has the duty to exercise reasonable care in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the

seriousness of the risk and the burden on the respective parties of avoiding the risk.

Coburn contends this instruction is an inaccurate statement of his duty of care because it does not allow the jury to determine that the duty to maintain the area where Burton slipped was in actuality imposed on the tenant, McMillan. Coburn contends that McMillan "controlled" the area, and thus had a duty to maintain it. Coburn also specifies as error the superior court's exclusion of evidence and certain proposed instructions, which were relevant to the issue whether McMillan "controlled" the area where the accident occurred.

Finally, Coburn also specifies as error the superior court's ruling allowing Peter Hupperten to testify as an expert witness. Coburn argues that Hupperten testified solely to matters which the jury was capable of understanding without the assistance of expert testimony.

## II. DID THE SUPERIOR COURT ERR IN HOLDING THAT THE PROVISIONS OF PARAGRAPH NUMBER TWENTY–FOUR OF THE LEASE BETWEEN COBURN AND McMILLAN WAS INADMISSIBLE?

 The central issue in this appeal is whether or not the superior court correctly ruled that paragraph number twenty-four of the lease between Coburn and McMillan was inadmissible.

Paragraph twenty-four of the lease between Coburn and McMillan provides in part: "Snow removal from the Lessee's sidewalks and driveway is the responsibility of the Lessee." Coburn sought to introduce the lease into evidence for the purpose of demonstrating that his tenant, McMillan, had control over and the exclusive duty of maintaining the area where the accident occurred.

The superior court excluded paragraph twenty-four of the lease on the basis of AS 34.03.100(d)(1), which governs the manner in which a landlord may delegate the landlord's duties to the tenant. Coburn's primary argument here is that the superior

court erred in its ruling because it failed properly to analyze what the landlord's obligations were to the tenant. Coburn asserts that the superior court mistakenly focused on how a landlord may legally delegate his duties, without first determining what duties Coburn owed to McMillan. We find Coburn's argument persuasive and hold that the superior court erred in refusing to admit paragraph twenty-four of the lease into evidence.

Alaska Statute 34.03.100(a)(2) requires a landlord to "keep all common areas of the premises in a clean and safe condition." Section 120(1) imposes a correlative duty [1] upon any tenant to "keep that part of the premises occupied and used by the tenant as clean and safe as the condition of the premises permit[s]." [2] These respective duties are not exhaustive, but apply in partial derogation of the common law duty of reasonable care imposed upon landlords and tenants alike in view of all the circumstances. *See Webb v. City and Borough of Sitka,* 561 P.2d 731, 733 (Alaska 1977) ("A landowner or owner of other property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk.") (footnote omitted).

In the case at bar, the superior court did not determine whether the area in which Burton fell was a "common area" or "part of the premises ... occupied and used" by McMillan. Rather, the court reasoned that under AS 34.03.100(d)(1) a landlord may not assign maintenance tasks even in "non-common areas [except] by a separate writing supported by a separate consideration." [3]

Section 100(d)(1) provides, in relevant part:

> The landlord and tenant of a dwelling unit other than a single family residence may agree that the tenant is to perform specified ... maintenance tasks ... only if
>
> (1) the agreement of the parties is entered into in good faith and not for the purpose of evading the obligations of the landlord and is set out in a separate writing signed by the parties and supported by adequate consideration.

We conclude that the superior court misinterpreted section 100(d)(1), and therefore remand. Section 100(d)(1) does not establish or apportion duties; rather, section 100(d)(1) governs landlords' attempts to shift duties such as the maintenance of common areas to tenants. Under URLTA as under the common law, the primary obligation to remove snow and ice in common areas falls upon the landlord; on

---

1. *See, e.g.,* Note, *Landlord–Tenant Reform: Arizona's Version of the Uniform Act,* 16 Ariz.L.Rev. 79, 121–22 ("the tenant's maintenance duties are correlative to those of the landlord").

2. "Premises" includes "grounds, areas and facilities held out for the use of tenants generally or whose use is promised to the tenant[.]" AS 34.03.360(10).

3. The following colloquy took place:

 THE COURT: What about his theory that your client was walking across a common area—excuse me, a non-common area, a—apparently he's asserting that that portion of the parking lot was assigned to McMillan.

 MR. GREBE: That's what I'm getting at. If you read (d) properly, I think whether it's the porch, whether it's the sidewalk out in front of the porch or whether it's the interior wall, it doesn't matter. It's saying no repairs, alterations, remodeling, maintenance tasks can be required of the tenant unless they're in a separate writing. They're talking about *all* areas.

 THE COURT: I see your position. Even assuming he's right that this was not a common area, you can't assign maintenance tasks without a separate writing.

 . . . .

 MR. WAGGONER: But the provision I cited you, too, refers to cleaning and that's what this is. Essentially just cleaning the snow off and I think—you know, he's stretched his argument a little too far here. He's saying we have to go shovel the snow off her *porch* and that's not what the statute means. We have to clean common areas but not someone's assigned space. Thank you.

 THE COURT: I disagree. I think what it says in multiple family rentals is a landlord is responsible for common area maintenance and safety and even if he is going to assign maintenance tasks in non-common areas, it's got to be by a separate writing supported by a separate consideration.

leased premises, this duty is the tenant's.[4] Therefore the superior court erred in not allowing Coburn to adduce otherwise competent evidence, including paragraph twenty-four of McMillan's lease, tending to show that the area of concern was not a "common area" under section 100(a)(2), but rather an area "occupied and used" by McMillan under section 120(1).[5]

### III. THE SUPERIOR COURT'S DECISION TO ALLOW PETER HUPPERTEN TO TESTIFY AS AN EXPERT WITNESS.

■■■■ Expert testimony is allowed where it will "appreciably assist the trier of fact in deciding the issue in question." *D.H. v. State*, 561 P.2d 294, 297 (Alaska 1977).[6] Hupperten testified that the gravel covering the unpaved driveway was "very coarse" in that it consisted of rocks between "a quarter inch to rocks of over 2 inches," thus creating "a very uneven base" upon which ice would accumulate.[7] Hupperten further testified that the driveway in front of the four-plex sloped downward from the building to the street, and that snow and ice melting from the roof above McMillan's unit would run off onto the parking area in front of her unit. Finally, Hupperten testified that by installing a roof gutter, Coburn could have directed the runoff to an area where people do not need to walk.

■■■■ In rejecting Coburn's motion to exclude Hupperten's expert testimony, the superior court stated in part:

> [B]ut when we start talking about the significance of degree of slope versus or combined with paved versus non-paved large rock versus fine gravel, I think you'd have to say that these are sufficiently beyond the ken of the normal mortal that ... expert opinion, if believed, would be of appreciable assistance. It's still for [the jury] to believe and you can still attack him on it.

Based upon our review of the relevant portions of the record, we hold that the superior court did not abuse its discretion in permitting Hupperten to testify as an expert witness.

REVERSED and REMANDED for a new trial.[8]

---

4. *See, e.g., Danner v. Myott Park Ltd.,* 209 Neb. 103, 107, 306 N.W.2d 580, 582 (1981); Restatement (Second) of Property 2d (Landlord and Tenant) § 17.3 & illustration 9 at 193 (1977).

5. This error infects the court's instruction to the jury that "[a] landowner has the duty to exercise reasonable care in maintaining his property in a reasonably safe condition in view of all the circumstances...." A valid lease provision is such a circumstance. Nevertheless we reject Coburn's contention that he was entitled to a directed verdict that the area in question was leased to McMillan. Evidence to the contrary included Burton's testimony that tenants other than McMillan often walked by the spot where Burton fell; McMillan's testimony that Coburn paid a contractor to remove snow from the area in front of the entire four-plex whenever two or more inches of snow fell; Burton's testimony that the driveway contained no "private" or "tenant only" parking signs; and Peter Hupperten's testimony (confirmed by Coburn) that the gutterless design of the building caused runoff to accumulate in front of McMillan's unit. *Cf.* AS 34.07.450(6) (defining "common area" for purposes of Horizontal Property Regimes Act).

6. "The decision whether to permit a witness to testify as an expert is one committed to the sound discretion of the trial court," and will be reviewed only for abuse. *Handley v. State,* 615 P.2d 627, 630 (Alaska 1980).

7. Hupperten testified in part that:

 you're not gonna get all of the snow and ice up unless you dig up all the gravel. The coarser the gravel is, the more residue of snow and ice you're gonna have and it's gonna build up on you, and that's what we find out just from history on it and working with it.... [T]he rock does ... not allow you to get a clean pick up of the snow which can melt and then during areas of thawing and freezing, it can go back to ice.

8. Our disposition makes it unnecessary to discuss any of the remaining issues raised in this appeal. Nevertheless, Coburn's assertions that the superior court erred in refusing to give his proposed instructions 39 and 40 will be addressed.

 Coburn's proposed jury instruction number 39 states: "A lease of an apartment in a building may include the area necessary for parking a

motor vehicle by implication, and if it does, the landlord is under no obligation to maintain that area which is under control of the tenant." Even assuming that McMillan bore a duty to maintain the area in which Burton fell, this proposed jury instruction would erroneously preclude a jury from considering other causes of the accident, such as whether there was a design defect, either in the sloped, gravel driveway, or in the gutterless roof. This proposed instruction is therefore erroneous.

Coburn's proposed jury instruction number 40 reads: "A landlord is not liable to his tenant or the tenant's visitors if they [are] injured by a dangerous condition that arises after the tenant leases the apartment." The Restatement (Second) of Torts states that a landlord is generally "not subject to liability" for injuries "caused by any dangerous condition which comes into existence after the lessee has taken possession." § 355. Coburn's instruction number 40 states this proposition in absolute terms, neglecting to note that section 355 begins with the words, "Except as stated in §§ 357 and 360–62." This instruction, too, is erroneous. We therefore conclude that the superior court did not err in rejecting Coburn's proposed instructions 39 and 40.