STATE of Rhode Island WATER
RESOURCES BOARD

v.

Kenneth HOWARD et al.

No. 98–416–Appeal.

Supreme Court of Rhode Island.

May 27, 1999.

Rebecca Tedford Partington, Providence, for Plaintiff.

John William Dineen, Providence, for Defendants.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The consolidated appeals in this eviction action came before the Court for oral argument on May 10, 1999, pursuant to an order entered on February 22, 1999, directing the parties to appear and show cause why the issues raised in the defendants' appeals should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by these appeals should be summarily decided.

The controversy giving rise to this litigation began when the State Water Resources Board (state), in its capacity as a landlord, brought eleven separate eviction actions against the defendants (tenants).[1] The properties in dispute are located in the Big River Management Area in West Greenwich, Rhode Island. Some thirty years ago, the state acquired the land by eminent domain for purposes of developing the Big River Reservoir. In 1982, the state leased residential properties situated on this land to various tenants on a month-to-month basis at rents ranging from $30 to $200 per month. Under the leases, tenants were responsible for all necessary repairs and improvements. Subsequently, the reservoir plans never materialized and in 1993, the General Assembly designated the land as "open space" under G.L.1956 § 37–20–1.

In 1995, after an extensive market review for a rental update of its properties, the state proposed increasing rents to their fair market values and held public meetings to explain the appraisal process.

In August 1995, the state mailed proposed leases, to be effective October 1995, which included increased rents to be implemented over a two-year period. Additionally, the new leases provided that in return for deducting an amount from the fair market value of the rent, the tenants would be responsible for all necessary maintenance and repairs (ordinary wear and tear excepted) and that the repairs should be in compliance with applicable housing and building codes. Part of this condition included an agreement to maintain the heating, plumbing, electrical, and all other mechanical and structural systems. Most tenants signed the new leases. However, the defendants, maintaining that the new leases constituted an improper attempt by the state to shift its lawful responsibilities as a landlord under G.L.1956 § 34–18–22, refused to sign. They continued to occupy the dwellings and fulfill their legal obligations under the 1982 leases.

In December, 1995, the state notified the tenants by letter that their tenancies would be terminated. In response, the tenants filed a complaint in the United States District Court alleging that they could not be evicted without good cause and that the state's action violated various constitutional rights. The United States District Court, after finding that the leases constituted month-to-month tenancies and that the state had complied with the relevant eviction procedures, dismissed all of the federal claims and declined to rule on the state claims. Meanwhile, the state filed eviction actions against the eleven tenants in the Third Division District Court. In addition to their defense that the 1995 leases were unlawful, the tenants asserted that the evictions constituted unlawful retaliation in violation of § 34–18–46.

The District Court judge consolidated the actions and ruled in favor of the tenants. The state appealed to the Superior Court where subsequently, summary judg-

1. The record reveals that two of the eleven original defendants no longer are tenants.

ment was granted in favor of the state with final judgments being entered thereon. The tenants filed a notice of appeal for case number "KD 97–440 through 450" but paid only one filing fee.

 As we have stated previously, case consolidation is allowed to avoid unnecessary costs or delay but case consolidation does not result in a merger of the cases. *See Martin v. Lilly*, 505 A.2d 1156, 1159 (R.I.1986). Causes of action, although consolidated, remain distinct throughout trial and in the event of an appeal, a notice of appeal must be filed for each action. *See id.* Rule 5(a) of the Supreme Court Rules of Appellate Procedure provides that "[w]hen two (2) or more parties file a joint notice of appeal pursuant to Rule 3(b), each appellant shall pay one hundred fifty dollars ($150)." Here, the notice of appeal incorporated all eleven of the case numbers from the judgments below, but only one filing fee was paid. Consequently, these appeals are not properly before us and therefore, they are summarily dismissed on that basis. However, even if our jurisdiction had been properly invoked, we believe that the disputed leases are valid. Thus, to terminate the uncertainty resulting from the state's actions, we will assume jurisdiction arguendo and consider the appeals as if they had been properly filed.

While we agree that summary judgment is a "drastic remedy to be granted sparingly only when a review of all pleadings, affidavits, and discovery materials properly before the court demonstrates that no issue of fact material to the determination of the lawsuit is in genuine dispute," here, the grant of summary judgment was proper. *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 631 (R.I.1998).

 It is undisputed that the state complied with the eviction procedures set forth in the Landlord–Tenant Act. We agree with the United States District Court that the 1982 leases are periodic month-to-month tenancies; consequently, the state was permitted to evict the tenants for no cause. The tenants assert that by including paragraph nine in the leases, the state may evict only for the specified causes in that paragraph.[2] We disagree. To hold otherwise would be tantamount to declaring that the tenants acquired perpetual leases in derogation of G.L.1956 § 37–7–5, which limits leases with the state to a maximum period of ten years.

 The tenants also assert that the maintenance and repair provisions in the 1995 leases are unlawful and consequently, they were justified in refusing to sign the proposed leases. Section 34–18–22(a)(1) and (2) of the Residential Landlord Tenant Act requires a landlord to "[c]omply with the requirements of applicable building and housing codes affecting health and safety;" and to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." This includes a requirement to ."[m]aintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances * * * supplied or required to be supplied by him or her." Section 34–18–22(a)(4). Section 34–18–22(c) provides that:

"The landlord and tenant of a dwelling unit may agree in writing that the tenant perform specified repairs, maintenance tasks, alterations and remodeling but only if:

(1) The agreement of the parties is entered into in good faith and set forth in a writing signed by the parties and supported by adequate consideration;

---

2. Paragraph nine of the 1982 lease states:
 1 "In the event that the Lessee shall be in arrears in his payment of the rent for fifteen (15) days or more, or if any covenant on the part of the Lessee herein contained shall

not be performed or observed, the State shall have the right to declare this Rental Agreement terminated and take possession of the premises."

(2) The work is not necessary to cure noncompliance with subsection (a)(1) of this section."

It is clear from the language of this section that a landlord is prohibited from requiring a tenant, at the tenant's expense, to restore existing properties to present code requirements. It is equally clear that the landlord may shift the responsibility for performing ordinary specified repairs and maintenance of the rented dwelling premises to the tenant, provided that the parties act in good faith; the parties agree in writing; the agreement is supported by adequate consideration; and the agreement is not in violation of § 34–18–22(c)(2).

 In the present cases, there are no provisions in the proposed leases which shift the responsibility to cure existing or past violations of the applicable housing and building codes to the tenants. Indeed, at no point have the tenants alleged that the various state owned dwellings are presently in violation of any applicable building or housing code. The facts of these cases show that the state has made a legitimate, good faith attempt to negotiate leases which provide merely for the shifting of the responsibility for ordinary repair and maintenance to the various tenants in return for a rent which is substantially less than its fair market value. Such action is permitted under § 34–18–22(c) and consequently, the trial justice properly granted summary judgment in favor of the state.

For the foregoing reasons, the tenants' appeals are denied, and the judgments of the Superior Court are affirmed and the case papers are remanded to the Superior Court.