**Sue SULLIVAN and Patrick McCabe, Appellants,**

v.

**Latha SUBRAMANIAN, Appellee.**

No. S–8724.

Supreme Court of Alaska.

May 12, 2000.

---

Patrick J. McCabe, Anchorage, for Appellants.

Dorothea G. Aguero, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

PER CURIAM. ·

I. · *INTRODUCTION*

This landlord-tenant dispute requires us to consider the circumstances under which Alaska's Uniform Landlord and Tenant Act allows tenants to recover damages for their landlord's noncompliance with duties imposed under the act. We hold that the act permits a tenant to recover damages, including .diminished rental value, for a landlord's breaches of statutory duties, regardless of whether those breaches are "material" or involve "essential services." Because the trial court's findings on the issues of breach and damages do not adequately explain the basis of its decision and preclude us from determining whether it correctly applied the law, we remand for reconsideration and new findings.

II. *FACTS AND PROCEEDINGS*

In April 1995 Dr. Latha Subramanian bought a four-unit apartment building in Anchorage. Patrick McCabe and Sue Sullivan occupied two of the building's apartments and continued on as tenants· after Subramanian acquired the fourplex.

In October 1997 McCabe and Sullivan sued Subramanian, alleging that she had repeatedly violated her contractual and statutory obligations under their rental agreements and Alaska's Uniform Residential Landlord and

Tenant Act by neglecting the building's common areas, failing to maintain electrical facilities, and providing inadequate security. McCabe and Sullivan sought damages in the form of diminished rental value and initially requested an order compelling Subramanian to attend to the common areas of the building.

Subramanian denied the allegations of the complaint and, in early December 1997, served notices of eviction on both McCabe and Sullivan for late payment of rent. Upon receiving his notice, McCabe stopped payment on his check for the December rent.

McCabe and Sullivan vacated their apartments on December 22. Thereafter, they amended their complaint, dropping their claim for injunctive relief, renewing their claims for damages based on breach of contractual and statutory duties, and stating new claims for retaliatory eviction and failure to return security deposits. Subramanian again denied the allegations; she also counterclaimed against McCabe for deliberately breaking the apartment building's front door and failing to pay the December rent.

After conducting a non-jury trial, Superior Court Judge Peter A. Michalski entered written findings of fact and a final decision and order ruling in favor of Subramanian.

The trial court found that after Subramanian purchased the fourplex "the care for some of the common areas suffered from neglect." It noted that Subramanian arranged to have the lawn mowed only once each summer, and that it became overgrown; according to the court, "[a]nother common area which suffered was the hallways[, which] ... received little maintenance, resulting in dirty, littered halls in which some of the lights were frequently burned out."

The court found that, as a result of these and other concerns, the tenants became "disappointed in the attention the landlord was affording the property" and began "resorting to appropriate self help," taking measures such as replacing light bulbs, cleaning halls, and plowing the drive and then deducting the costs of these measures from their rent.

Nevertheless, the court ruled that none of these "failures of the landlord" rose "to a level justifying diminution of fair rental values pursuant to AS 34.03.180." It went on to find that Sullivan and McCabe had failed to prove their claims of retaliatory eviction, that McCabe had unjustifiably broken the front door of the fourplex, causing $500 in damages, and that Subramanian had properly withheld McCabe's security deposit to offset the cost of this damage and to cover the amount McCabe owed for rent after stopping payment on his last month's check.

Based on these findings, the court concluded that Subramanian was entitled to recover damages of $835.16 from McCabe.[1] The court further concluded that Sullivan—who had paid her last month's rent and had received a refund for her security deposit—recovered nothing from Subramanian.

After the court entered its decision, Subramanian moved for an award of full attorney's fees, alleging bad faith and vexatious conduct by McCabe, who is an attorney and had represented both himself and Sullivan throughout the proceedings. The court granted this motion as to McCabe, ordering him to pay $14,825 in attorney's fees and entering judgment against him in the total amount of $16,572.86. The court separately entered judgment against Sullivan for costs totaling $872.12.

McCabe and Sullivan appeal.

### III. DISCUSSION

#### A. McCabe's and Sullivan's Claims

On appeal, McCabe and Sullivan argue: (1) that the superior court's findings are inadequate because they fail to resolve numerous factual points and do not squarely address the claims of contractual and statutory breach; (2) that the court's factual findings, coupled with the facts established by undisputed evidence at trial, prove contractual and

1. The court found that McCabe owed Subramanian $1,135.16 in total: $500 for the broken door, plus $635.16 in unpaid December rent—a figure calculated by prorating McCabe's monthly rent of $875 through December 22, the date he actually vacated his apartment. From this total of $1,135.16, the court deducted $300 for McCabe's security deposit, which Subramanian had withheld. This yielded a net obligation of $835.16.

statutory breaches that entitle McCabe and Sullivan to judgment as a matter of law; (3) that the trial court erred in failing to award Sullivan a prorated portion of her December 1997 rent for the period after she vacated her apartment, as well as statutory damages for Subramanian's failure to refund the excess December rent payment; (4) that the evidence fails to support the $500 award against McCabe for damaging the fourplex door; and (5) that the court erred in awarding full reasonable attorney's fees against McCabe.

### B. The Trial Court's Findings Do Not Permit Meaningful Appellate Review.

We conclude that McCabe's and Sullivan's first point has merit: the trial court's findings are insufficient to allow meaningful appellate review.

#### a. Requirements of Alaska Civil Rule 52(a)

█ Under Alaska Civil Rule 52(a), the trial court had a duty, upon completing the non-jury trial, to "find the facts specially and state separately its conclusions of law thereon." This rule required the court to "deal adequately with and state with clarity what it finds as facts and what it holds as conclusions of law. The findings and conclusions should be so clear and explicit as to give the Supreme Court a clear understanding of the basis for the decision made."[2]

#### b. The trial court's findings overlook a significant aspect of McCabe's and Sullivan's factual claim.

█ McCabe and Sullivan presented substantial evidence indicating that Subramanian neglected the common grounds surrounding their apartment building, did not maintain the common areas within the building or replace burned out lighting, and failed to heed repeated requests to protect the common areas of the building, particularly the storage lockers, against damage and theft by trespassers. While the trial court's factual findings address the first two claims of harm, confirming that Subramanian neglected the lawn and the common areas within the fourplex, the findings fail to discuss, or even mention, the latter factual claim—that Subramanian failed to secure the building against trespass and theft.

#### c. The trial court's findings fail to expressly address McCabe's and Sullivan's claims for breach and do not adequately explain the basis for the court's denial of diminished rental value.

█ The trial court also failed to explain its resolution of McCabe's and Sullivan's claims for contractual and statutory breaches. These claims are governed by Alaska's Uniform Residential Landlord and Tenant Act.[3] Adopted in 1974,[4] the "Uniform Act constitutes a basic reform of landlord-tenant law, according tenants previously unrecognized rights by recognizing the contractual nature of the landlord-tenant relationship."[5] By its own terms, the act is to be "liberally construed and applied to promote its underlying purposes and policies," one of which is "to encourage landlord and tenant to maintain and improve the quality of housing."[6]

Subsection .100(a) of the act defines the landlord's duties to include making all repairs necessary to keep the premises in a fit and habitable condition, keeping all common areas clean and safe, maintaining in good and safe working order all electrical facilities and

---

2. *Dickerson v. Geiermann*, 368 P.2d 217, 219 (Alaska 1962) (footnotes omitted).

3. AS 34.03.010—.380.

4. *See* Ch. 10, § 1, SLA 1974.

5. *McCall v. Fickes*, 556 P.2d 535, 537–38 (Alaska 1976) (footnotes omitted).

6. AS 34.03.010. This section provides:
   (a) This chapter shall be liberally construed and applied to promote its underlying purposes and policies.
   (b) The underlying purposes and policies of this chapter are to
   (1) simplify, clarify, modernize, and revise the law governing the rental of dwelling units and the rights and obligations of landlord and tenant;
   (2) encourage landlord and tenant to maintain and improve the quality of housing; and
   (3) make uniform the law among those states that enact it.

appliances, providing for the removal of waste, and, upon request of a tenant, providing and maintaining locks and keys that are reasonably adequate to ensure safety to the tenant's person and property.[7] Barring circumstances that do not exist here, landlords are prohibited from shifting these duties to their tenants.[8]

Section .160 of the act addresses a tenant's remedies in the event a landlord breaches a duty imposed under section .100. In the event of a noncompliance with section .100 "materially affecting health and safety," subsection .160(a) allows tenants to terminate their rental agreements after giving appropriate notice to their landlords.[9] For other serious breaches—as when landlords deliberately or negligently fail to supply essential services such as running water, hot water, heat, or sanitary facilities—a separate provision of the act, section .180, makes additional remedies available "immediately" to tenants.[10]

7. AS 34.03.100(a) provides, in relevant part:
   (a) The landlord shall
   (1) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;
   (2) keep all common areas of the premises in a clean and safe condition;
   (3) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, kitchen, and other facilities and appliances, including elevators, supplied or required to be supplied by the landlord;
   (4) provide and maintain appropriate receptacles and conveniences for the removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of the dwelling unit and arrange for their removal;
   . . . .
   (6) if requested by the tenant, provide and maintain locks and furnish keys reasonably adequate to ensure safety to the tenant's person and property[.]

8. *See* AS 34.03.100(d); *Coburn v. Burton*, 790 P.2d 1355, 1357–58 (Alaska 1990).
   AS 34.03.100(d) provides:
   (d) The landlord and tenant of a dwelling unit other than a single family residence may agree that the tenant is to perform specified repairs, maintenance tasks, alterations, or remodeling only if
   (1) the agreement of the parties is entered into in good faith and not for the purpose of evading the obligations of the landlord and is set out in a separate writing signed by the parties and supported by adequate consideration; and
   (2) the agreement does not diminish or affect the obligation of the landlord to other tenants in the premises.

9. AS 34.03.160(a) provides:
   Except as provided in this chapter, if there is a material noncompliance by the landlord with the rental agreement or a noncompliance with AS 34.03.100 materially affecting health and safety, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach and specifying that the rental agreement will terminate upon a date not less than 20 days after receipt of the notice if the breach is not remedied in 10 days, and the rental agreement shall terminate as provided in the notice subject to the provisions of this section. If the breach is remediable by repairs or the payment of damages or otherwise, and the landlord remedies the breach before the date specified in the notice, the rental agreement will not terminate. In the absence of due care by the landlord, if substantially the same act or omission that constituted a prior noncompliance of which notice was given recurs within six months, the tenant may terminate the rental agreement upon at least 10 days written notice specifying the breach and the date of termination of the rental agreement. The tenant may not terminate for a condition caused by the deliberate or negligent act or omission of the tenant, a member of the tenant's family, or other person on the premises with the tenant's consent.

10. AS 34.03.180 provides:
    (a) If, contrary to the rental agreement or AS 34.03.100, the landlord deliberately or negligently fails to supply running water, hot water, heat, sanitary facilities, or other essential services, the tenant may give written notice to the landlord specifying the breach and may immediately
    (1) procure reasonable amounts of hot water, running water, heat, sanitary facilities, and essential services during the period of the landlord's noncompliance and deduct their actual and reasonable cost from the rent;
    (2) recover damages based on the diminution in the fair rental value of the dwelling unit; or
    (3) procure reasonable substitute housing during the period of the landlord's noncompliance, in which case the tenant is excused from paying rent for the period of the landlord's noncompliance and, in addition, may recover the amount by which the actual and reasonable cost exceeds rent.
    (b) A tenant who proceeds under this section may not proceed under AS 34.03.160 as to that breach.
    (c) Rights do not arise under this section until the tenant has given written notice to the landlord. Rights do not arise under this sec-

In addition to these provisions describing remedies available for "material" breaches and breaches involving "essential services," the act establishes a general remedy in subsection .160(b) that applies whenever landlords breach any statutory or contractual duties. Without requiring that such breaches must be "material" or involve "essential services," this provision broadly authorizes tenants to "recover damages and obtain injunctive relief for *any noncompliance* by the landlord with ... AS 34.03.100."[11] Nothing in this provision suggests that diminished rental value is an impermissible form of damages, when actually proved.

Under AS 34.03.160(b), then, McCabe and Sullivan would be entitled to recover damages if they established any noncompliance by Subramanian with AS 34.03.100(a) that appreciably reduced their rental values. Construed favorably to McCabe and Sullivan, the evidence presented at trial would support a finding that Subramanian failed to comply with several duties imposed on her as a landlord by AS 34.03.100(a). (Indeed, although Subramanian argues otherwise, the trial court's findings suggest that the court actually found noncompliance.) Furthermore, McCabe's trial testimony is at least minimally sufficient to support a finding that Subramanian's noncompliance resulted in an appreciable drop in the fair rental value of the apartments. Yet the trial court's findings fail to determine whether Subramanian breached any duty under AS 34.03.100(a) and also fail to determine whether McCabe and Sullivan established a resulting drop in fair rental value.

The trial court's decision is particularly ambiguous in finding that "any of the failures of the landlord" did not "rise to a level justifying diminution of fair rental values

pursuant to *AS 34.03.180.*" (Emphasis added.) Given the court's reference to section .180, the provision governing breaches that involve failure to provide essential services, we are unable to determine whether the court meant to find that McCabe and Sullivan had simply failed to prove any appreciable diminution in fair rental value or if it meant instead to find that they were legally entitled to recover damages only if they proved a breach involving essential services, as specified in section .180, and that they had failed to prove such a breach. The former finding would be a factual determination within the scope of the trial court's discretion; the latter would be a finding based on a mistaken legal premise, since subsection .160(b) does not require proof of noncompliance involving failure to provided essential services.

Subramanian concedes that AS 34.03.180 has no relevance here but nevertheless insists the trial court's citation to this provision is simply a clerical error. But the reason for the court's reference to section .180 is not as obvious as Subramanian suggests. In mentioning section .180, the trial court expressly tracked the section's language, which specifically authorizes recovery "based on the diminution of fair rental value."[12] Thus, the court's reference to section .180 does not appear to have been inadvertent.

Moreover, Subramanian's final argument at trial also suggests that the court's reference to section .180 may reflect a mistaken understanding of the law, rather than an inadvertent citation. During final argument before the superior court, Subramanian insisted that recovery of damages for breach would be warranted only for a "material breach," and she emphasized that "[t]here was no material breach of the statute" here.[13]

---

tion if the condition was caused by the deliberate or negligent act or omission of the tenant, a member of the tenant's family, or other person on the premises with the tenant's consent.

11. AS 34.03.160(b) (emphasis added). Subsection .160(b) provides:

Except as provided in this chapter, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or AS 34.03.100, 34.03.210, or 34.03.280.

12. AS 34.03.180(a)(2).

13. Similarly, on appeal, even though she acknowledges that AS 34.03.180 did not limit McCabe's and Sullivan's claims, Subramanian incorrectly maintains that they were entitled to damages for diminished rental value only if they proved a breach that rendered the premises "unsuitable for use"—in other words, if they proved the equivalent of a "material" breach under subsection .160(a). In support of this argument, Subramanian mistakenly relies on *Berrey v. Jeff-*

Also ambiguous are the trial court's findings referring to McCabe's and Sullivan's self-help measures as "appropriate." In context, it is unclear whether the court meant to find that McCabe and Sullivan actually suffered no damages other than the out-of-pocket costs that they incurred and appropriately deducted from their rent or that such a deduction is the only appropriate measure of damages for a landlord's "non-material" breach of duties imposed under AS 34.03.100(a). The latter view would be problematic, since it would effectively allow landlords to shift the burden of statutory compliance, at least in part, from themselves to their tenants.[14]

In sum, the trial court did not address significant aspects of McCabe's and Sullivan's factual claims, did not expressly decide whether Subramanian had failed to comply with her duties under AS 34.03.100(a), did not determine whether any such violations resulted in an actual reduction of fair rental value, and did not explain the court's reasons for concluding that "any of the failures" by Subramanian failed to "rise to a level justifying diminution of fair rental values pursuant to AS 34.03.180." Given these omissions, the trial court's findings do not "give [us] a clear understanding of the basis for the decision [it] made."[15]

Because the findings create substantial uncertainty concerning the trial court's view of disputed material facts and generate doubt concerning its application of correct law, we conclude that a remand is necessary to allow the court to reconsider and fully explain its ruling on the issues of statutory breach and diminished rental value.[16]

### C. The Superior Court Erred in Failing to Rule on Sullivan's Claim for a Partial Refund of Rent and Damages Under AS 34.05.070(d).

■ Sullivan separately contends that the trial court erred in failing to order a partial refund of her December rent payment, as well as damages for Subramanian's failure to refund the payment promptly. Arguing that Subramanian made no effort to mitigate her damages by attempting to find a replacement tenant, Sullivan insists that she owed no rent beyond December 22, when she moved out of the apartment. Because Subramanian had no right to a full month's rent for December, Sullivan maintains that she is entitled to a prorated refund of her rent and to an award of damages under AS 34.03.070(d).[17]

We agree that the superior court must revisit this issue on remand. The trial court neglected to rule on Sullivan's claim for a refund and damages; its findings and conclusions resolve Sullivan's retaliatory eviction claim but make no mention of her claim under AS 34.03.070(d). Although the court expressly rejected McCabe's claim for similar damages because McCabe did not pay his

---

*coat,* 785 P.2d 20, 22 (Alaska 1990), which dealt with a commercial lease that was therefore not subject to the provisions of the Uniform Residential Landlord and Tenant Act. Accordingly, *Berrey*'s discussion of Restatement (Second) of Property Sections 5.4 and 5.5 (1977) is inapposite. These restatement sections do not reflect the act's provisions, which create special remedies for "material" noncompliance and noncompliance involving "essential services," while allowing tenants to recover damages for "any" other noncompliance. AS 34.03.160(a)–(b); AS 34.03.180.

**14.** *See* AS 34.03.100(d); *Coburn v. Burton,* 790 P.2d 1355, 1357–58 (Alaska 1990) (prohibiting such a shift).

**15.** *Dickerson v. Geiermann,* 368 P.2d 217, 219 (Alaska 1962) (footnotes omitted).

**16.** Given our decision to remand for reconsideration, it would be premature to consider McCabe's

and Sullivan's claims that the superior court erred in failing to award them damages for diminished rental value.

**17.** AS 34.03.070 provides, in relevant part:

(b) Upon termination of the tenancy, property or money held by the landlord as prepaid rent or as a security deposit may be applied to the payment of accrued rent and the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with AS 34.03.120. The accrued rent and damages must be itemized by the landlord in a written notice mailed to the tenant's last known address within the time limit prescribed by (g) of this section, together with the amount due the tenant.

. . . .

(d) If the landlord wilfully fails to comply with (b) of this section, the tenant may recover an amount not to exceed twice the actual amount withheld.

December rent and Subramanian therefore never retained any part of it, the same rationale would not apply to Sullivan, who did pay a full month's rent before vacating the apartment on December 22.

At trial, Subramanian contended that McCabe and Sullivan should both be liable for a full month's rent in December. But the trial court rejected this approach as to McCabe, calculating the damages that he owed Subramanian by prorating his rent through December 22. On appeal, Subramanian acknowledges that "the trial court did not explain why it ruled McCabe's rent should be pro-rated and not Sullivan's rent"; she concedes that the ruling "should have been consistent for both McCabe and Sullivan."

Subramanian has not challenged the trial court's decision to prorate McCabe's December rent. Moreover, as Sullivan persuasively argues, the record does not support a finding that Subramanian made any reasonable effort to find a new tenant to occupy the apartment after Sullivan vacated on December 22. Our review of the record convinces us that Sullivan was entitled to a prorated refund of rent for December. On remand, the superior court must therefore amend Sullivan's judgment accordingly. The court must also rule on Sullivan's claim for additional damages under subsection .070(d).[18]

### D. *The Evidence Supports the Trial Court's Award for the Broken Door.*

■ McCabe challenges the sufficiency of the evidence to support the trial court's award of $500 as the reasonable cost of repair for the door that he damaged. This argument lacks merit. At her deposition and later at trial, Subramanian estimated the cost of repair for the door to be at least $500. Although the estimate was based on hearsay, McCabe did not object to it on that ground. Subramanian described the damage that McCabe had caused, submitted pieces of the door jamb as a trial exhibit, and also submitted a photograph of the damage. Once the

fact of damages has been proved, their dollar amount "need only be proven to such a degree as to allow the finder of fact to reasonably estimate the amount to be allowed for [the] item [of damages]."[19] Subramanian met this burden here.

### E. *If the Court Awards Attorney's Fees on Remand, It Should Rely on AS 34.03.350 Instead of Civil Rule 82.*

■ McCabe last challenges the trial court's award of full reasonable attorney's fees to Subramanian. Our decision to remand this case for reconsideration on the merits renders this point premature and potentially moot. Nevertheless, we address a preliminary aspect of this issue briefly to provide guidance to the trial court on remand.

The trial court awarded attorney's fees under Civil Rule 82, concluding that full fees were justified because McCabe asserted his claims vexatiously and engaged in bad faith conduct. But AS 34.03.350 expressly governs the award of fees in this case, providing that "[a]ttorney's fees shall be allowed to the prevailing party in any proceeding arising out of this chapter or a rental agreement." McCabe's and Sullivan's claims arise "out of" Chapter 3 of Title 34, so any award of attorney's fees on remand should be made under section .350, rather than Rule 82.

Since we have never construed AS 34.03.350 and the parties have offered no meaningful discussion of the statute in their briefs, the superior court should have the first opportunity to decide any questions on remand concerning the statute's meaning and application.

### IV. CONCLUSION

For the foregoing reasons, we REMAND this case to the superior court with directions to reconsider its decision as directed herein and to enter findings and conclusions con-

---

**18.** Because Sullivan's entitlement to damages under this provision requires a factual finding of wilfulness, *see* AS 34.03.070(d), quoted *supra* note 17, we decline to decide the issue here.

**19.** *Pluid v. B.K.,* 948 P.2d 981, 984 (Alaska 1997) (citation and internal quotation marks omitted).

forming with the requirements of Civil Rule 52(a).