MANSFIELD, Justice
(concurring in part and dissenting in part).
I respectfully concur in part and dissent, in part because I disagree with two conclusions reached by the court. In particular, I do not think small claims courts can award unlimited attorneys’ fees without regard to the $5000 jurisdictional limit. Nor do I think the Iowa Uniform Residential Landlord and Tenant Act (IURLTA) makes it illegal for the landlord and the tenant of a single-family home to agree that the tenant will be financially responsible for a repair to an exterior door that is vandalized during the tenancy..
I. Small Claims Jurisdiction.
I would hold "that attorneys’ fees count against the jurisdictional limits of the small claims court. The statute, provides that the small claims court has jurisdiction over those “civil actionfs] for a money judgment where the amount in controversy is ... five thousand dollars or less ... exclusive of interest and costs.” ' Iowa Code § 631.1(1) (2011). So, the question is whether attorneys’ fees are costs or not. This is an important question because what’s good for the goose is good for the gander. If a eollegé student represented by a legal aid agency can recover her attorneys’ fees from a landlord in small claims court, so can a debt collector suing an indigent working single parent.
We are interpreting one -term, “costs,” in one statute, Iowa Code section'63L1. We cannot have the term mean one thing, for plaintiffs who are tenants- and something different for other - plaintiffs. And although the matter is not free from doubt, I believe the majority’s view of the matter is erroneous for several reasons. ■
First, as the court acknowledges, we have "consistently interpreted statutes that use the term “costs” alone to exclude attorney fees. See Weaver Constr. Co. v. Heitland, 348 N.W.2d 230, 233 (Iowa 1984) (‘We do not agree, however, that the word ‘costs’ [in chapter 677] should be so liberally stretched as to include attorney fees.”); Turner v. Zip Motors, 245 Iowa 1091, 1100, 65 N.W.2d 427, 432 (1954) (“[Section 625.1] has always been held to mean the ordinary costs, not including attorney fees.”). I am not aware of a single contemporary Iowa statute lacking the phrase “attorney fees” while using the term “costs” alone that has been interpreted to . award attorney fees as costs. Why start here? , .
Second," I' am not persuaded that when the general assembly enacted the Unified Court Act in 1972, it intended to adopt caselaw from 1882 and 1932 relating to the old court, system. The statute setting forth the jurisdictional limits in. the old system was worded differently. See Iowa Code § 601.2 (1971) (stating-that justice-of-the-peace courts had jurisdiction “where the amount in controversy does not exceed one hundred dollars”).
As the majority recognizes, the whole idea of the Unified Court Act was to create a new and better system than what' had gone before. And when the legislature did so, it seems to have consciously borrowed from the federal diversity statute. See 28 U.S.C. § 1332 (2012) (“The district-courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or valúe of $75,000, exclusive of interest and-costs.....”); 1972 Iowa Acts ch. 1124, § 60 (codified at Iowa Code *193 § 631.1 (1973)) (“A small claim is a civil action for money damages where the amount in controversy in money is one thousand dollars or less, exclusive of interests and costs... ”).
Under the federal diversity statute, it was well understood that attorneys’ fees were separate from “interest and costs.” See, e.g., Mo. State Life Ins. Co. v. Jones, 290 U.S. 199, 202, 54 S.Ct. 133, 134, 78 L.Ed. 267, 269 (1933); 14AA Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3712, at 806 (4th ed.2011). So I would be more inclined to follow the federal interpretations of the diversity statute as a guide to interpreting Iowa Code section 631.1. See Peoples Trust & Sav. Bank v. Armstrong, 297 N.W.2d 372, 373-75 (Iowa 1980) (noting the resemblance between the wording of Iowa Code section 631.1(1) and that of the federal diversity statute and applying federal diversity precedents to determine when interest counts .against the small claims jurisdictional limit).
Furthermore, in the original 1972 Unified Court Act, when the word “costs” was used in other contexts, it clearly did not include attorneys’ fees. See 1972 Iowa Acts ch. 1124, § 65 (codified at Iowa Code § 631.6 (1973)) (“Fees and costs shall be one-half of fees and costs in regular civil actions in district court.”). ‘When the same term appears multiple times in the same statute, it should have the same meaning each time.” State v. Paye, 865 N.W.2d 1, 7 (Iowa 2015).
Another reason to interpret costs in the small claims jurisdictional statute as something different from attorneys’ fees is that it furthers the legislature’s goal of “a sim-pier, easier, and less expensive procedure” in which the parties “need not retain an attorney unless they wished.” Barnes Beauty Coll v. McCoy, 279 N.W.2d 258, 259-60 (Iowa 1979). Plainly, if attorneys’ fees don’t count against the jurisdictional limit, that is an incentive for parties to use attorneys in small claims court. And the presence of ah attorney, while generally desirable if the matter is significant, tends to undermine the informality of the proceeding.[18] From the very beginning, the legislature made clear that small claims cases don’t need attorneys. See 1972 Iowa Acts ch. 1124, § 70 (codified at Iowa Code § 631.11 (1973)).
Under the majority’s approach, some small claims defendants may be subject to substantial- judgments — but .without the procedural protections afforded in district court. It is antithetical to the purpose of small claims court to allow potentially open-ended attorney-fee. recoveries that could dwarf the stated small claims jurisdictional limit.
Finally, I am not persuaded that the out-of-state authority on which the court relies — particularly Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 741 A.2d 591 (1999) — -has any bearing on this issue. The New Jersey court rule involved in Lettenmaier has different wording from Iowa’s statute. See id., at 593 (quoting New Jersey Rule 6:1-2(a)(1), which mentions only “the amount in controversy”).
Furthermore,, unlike my colleagues, I would not even give minimal weight to Lettenmaier’s citation of two Iowa cases because it miscited them. See id. at 594-95 (citing Ayala v. Ctr. Line, Inc., 415 N.W.2d 603 (Iowa 1987); Maday v. El *194 view-Stewart, Sys. Co., 324 N.W.2d 467 (Iowa 1982)). Lettenmaier cited Maday for “examining structure of 'statute allowing counsel fees and concluding that, because such fees were grouped with costs, they were costs.” Id. at 594. Lettenmaier cited Ayala for “refusing to consider attorney fees in determining whether jurisdictional limit had been exceeded because they are separate and distinct events giving rise to cause of action and cannot be assessed until liability is established.” Id. at 595. I can’t find those propositions anywhere in Maday and Ayala.[19]
II. Lease Provisions Making Tenants Responsible for Costs of Repairing an Exterior Door Damaged by Third-Party Vandalism.
The lease between Apartments Downtown — on the one hand — and Elyse De Stefano and her housemates — on the other hand — is three pages long. De Stefano testified she did not read the lease before signing it, but she does not dispute that she assented to its terms. She testified that no one misrepresented what was in the lease.
In paragraph 30, the lease provides, “Tenants agree to pay for all damages to the apartment windows, screens, and doors, including exterior unit doors (including random acts of vandalism).” The lease also provides in paragraph 33, “Unless the Landlord is negligent, Tenants are responsible for the cost of all damages/repairs to windows, screens, doors, carpet, and walls, regardless of whether such damage is caused by residents, guests or others.” Additionally, the lease contains a $452-$690 estimated cost for the repair or replacement of a prehung entry door.
The lease further provides that the landlord’s Iowa City Maintenance would perform all repairs “unless written authorization is secured from Landlord.” It states that Iowa City Maintenance charges $70 per horn* during regular business hours and $90 per hour during nights and weekends, with a minimum of one hour per service call. Iowa City Maintenance is an alter ego of Apartments Downtown.
The three-page lease has some circling and other marks on it. Some of the marks are in the vicinity of the foregoing provisions. According to the business manager of Apartments Downtown, the presence of these markings confirmed that specific provisions of the lease were actually reviewed with the tenants before they signed it. As summarized by the district court, “The Court finds no evidence in the record that there was a lack of honesty in fact in the conduct of the transaction concerned.”
The door replacement charge and the subsequent late fees stemmed from a burglary that occurred at De Stefano’s residence in October 2010. De Stefano and the other tenants filed a police report with the Iowa City Police Department. The report stated that the burglary had left the exterior doorframe and the door lock damaged, and the tenants reported two or three cans of beer as well as a bottle of flavored vodka stolen. Apartments Downtown was called to repair the door on October 11 — presumably by De Stefano or one of her cotenants.
Apartments Downtown arranged for Iowa City Maintenance to replace the kicked-in door, and the charges were billed to De Stefano and her roommates. The total cost of the repair and replacement was $598.46, which included $318.46 for the replacement door and $280 for four hours of labor. Upon receipt of this charge, one *195 of De Stefano’s housemates sent a letter dated November 2 to Apartments Downtown, contesting the charge and advising that the damage was not caused by any of the tenants and that the police investigation was ongoing. In her letter,•the tenant referenced paragraph 30 of the lease agreement, which stated, “Tenants agree to pay all damages to the apartment windows, screen, and doors, including exterior unit doors (including random acts of vandalism).” Yet the tenant said she believed this lease provision to be unconscionable and thus unenforceable by a court.
Apartments Downtown responded on November 17,
By signing the lease agreement you agree to pay for all damages to- the apartment windows, screens, and doors, including exterior unit doors, including random acts of vandalism. If ... the door was broken down during a burglary, the destruction of the door is considered vandalism..,, Even though the door was damaged during the break in, and not by a guest of the tenants, it still falls under the basis o[f] a visitor, whether they were .a known guest or not_ [I]f the police investigation results in the finding of the guilty party that was responsible for the damage, then at that time we would be more than happy to charge said person(s) for the damage. Until then however, the damage incurred to the property fall[s] under the responsibility of the leased tenants. At this time you currently still have an outstanding balance of 598,46 on your account, if this would happen to still be current when December[’]s rent comes due, it will accumulate the standard $40.00 late charge.
A principal bone of contention between the parties is whether the IURLTA permits the lessor and the lessee of a single-family home to agree in writing that the lessee will be responsible for the repair of a door damaged by third-party vandalism during the lessee’s tenancy. My colleagues ultimately do not decide this issue, but they frame the issue in such one-sided terms that I feel obligated to respond.
Section 562A.15(1) of the IURLTA imposes a warranty of habitability on the landlord. Iowa Code § 562A.15(1) (2011). Among other things, the landlord shall “[c]omply with the requirements of applicable building and housing codes .materially affecting health and safety” and “[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.” See id. § 562A.15(1)(a )-(&). However, the duties in subsection (1) of section 562A.15 are' immediately qualified by subsection (2):
The landlord and tenant of a single family residence may agree in writing that the tenant perform the landlord’s duties specified in paragraphs “e ” and “/” [relating to waste removal and the provision of water, hot water, and heat], and also specified repairs, maintenance tasks, alterations, and remodeling, but only if the transaction is entered into in good faith.
Id. § 562A.15(2) (emphasis added).
My colleagues present a lengthy argument as to why subsection (2) affects only paragraphs (e) and (f) of subsection (1) and not the rest of the subsection. In other words, according to this argument, the tenant of a single-family residence may not agree to assume any responsibilities relating to the implied warranty of habitability except those covered by paragraphs (e) and (/). The majority does not ultimately adopt this position, but it does not acknowledge or even mention the counterarguments against this view.
The biggest problem with this interpretation of the IURLTA is that it gives no effect to the language after “and also” in *196 subsection (2). See id. § 4.4(2) (setting forth the presumption that “[t]he entire statute is intended to be effective”).
Clearly, the language “and also specified repairs, maintenance tasks, alterations, and remodeling” must refer to' landlord duties other than those set forth in paragraphs (e) and (f). Otherwise, the language would be totally superfluous. Driving this point home is that our legislature used the separator “and also,” indicating that what followed “and also” was going to be something different from what preceded it. Furthermore, it is difficult to conceive of alterations and remodeling that would be needed to provide waste removal; water, hot water, or heat, if indeed the entire subsection only applied to the duties in paragraphs (e) and (f).
Equally clearly, the language “and also specified repairs, maintenance tasks, alterations, and remodeling” must relate to landlord duties covered by paragraphs (1)(a), (1)(6), (1)(c), or (1 )(d). For one thing, section 562A15(2) is placed within the statute and written as if it were a qualifier to section 562A.15(1) as a whole. Moreover, if the terminology “specified repairs, maintenance tasks, alterations, and remodeling” did not relate to matters that would otherwise be landlord duties under paragraphs (1)(a), (1)(5), (1)(c), or (1)(d), the language would again be totally superfluous. Under a separate section of the IURLTA, landlords and tenants can always agree to various things in their .leases if their agreements are not contrary to the terms of the IURLTA — and there is ho “good faith” requirement. See id. § 562A.9(1) (stating that “[t]he landlord and tenant may include in a rental agreement, terms and conditions not prohibited by this chapter or other rule of law”). The legislature did not need to include the verbiage after “and also” to authorize the same thing.
Furthermore, 'the term “specified repairs”' in subsection (2) seemingly' corresponds with language in paragraph (1)(6) requiring the landlord to “[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.” Iowa Code § 562A.15(1)(&), .15(2). Under the argument offered by the majority, repairs has to mean something different in two subsections of the same statute. That seems unlikely. See Paye, 865 N.W.2d at 7 (indicating that the same term should have the same meaning when it appears multiple times in. the same statute).
Oddly, after scouring the country for out-of-state caselaw to support its interpretation of Iowa’s sui generis small claims jurisdictional statute, including the aforementioned New Jersey case, the majority omits discussion" of pertinent out-of-state caselaw here — even though we are talking about a uniform act adopted in many jurisdictions.
Existing caselaw interpreting the URL-TA undermines the argument presented by the majority. In Sullivan v. Subramanian, 2 P.3d 66 (Alaska 2000), the court referenced the duties in Alaska’s counterpart to paragraphs (1)(a), (1)(6), (1)(c), and (1)(d), and then added, “Barring circumstances that do not exist' here, landlords are prohibited from shifting these duties to their tenants.” Id. at 69-70 (emphasis added). In a footnote, the court then revealed the circumstances under which those duties could be shifted by citing the “specified repairs, maintenance tasks, alterations, or remodeling” language in Alaska’s counterpart to section 562A.15(3). Id. at 70 n. 8. The court also cited a prior Alaska case, see id., which indicated that Alaska’s counterpart to section 562A.15(3) “governs landlords’ attempts to shift duties such as the maintenance of common areas [found in the counterpart to Iowa Code *197 section 562A.15(1)(6) ] to tenants,” Coburn v. Burton, 790 P.2d 1355, 1357 (Alaska 1990).
Similarly, in L & M Investment Co. v. Morrison, 44 Or.App. 309, 605 P.2d 1347, 1350 (1980), the court cited Oregon’s counterpart to section 562A.15(1) and said, “[I]t is presumed that the stated rental is for premises in a habitable condition and the landlord is estopped from contending otherwise, at least in the absence of an express written agreement pursuant to [Oregon’s counterpart to section 562A.15(3) ].”
In Graber v. Engstrom, 384 N.W.2d 307, 308 (N.D.1986), there was a scenario like the present one where the landlord of a single-family residence (a mobile home) argued that the lease had transferred certain habitability obligations to the tenant including the obligation to repair a broken window. Discussing North Dakota’s counterpart to Iowa Code section 562A.15, the court indicated this shifting of responsibility would be lawful:
Section 47-16-13.1(1), N.D.C.C., among other things, requires a iandlord of a residential dwelling unit to comply with the requirements of applicable building and housing codes materially affecting health and safety; to make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition; and to maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, and other facilities and appliances supplied or required to be supplied by the landlord. Section 47-16-13.1(4), N.D.C.C., however, allows the landlord and tenant of a single-family residence to agree in writing that the tenant perform the landlord’s duties concerning specified repairs, maintenance tasks, alterations and remodeling if the transaction is entered into in good faith.
Id. at 308-09 (citation omitted). However, the court found the lease provision in question was “vague as to the specific maintenance tasks intended to be delegated to” the tenant and therefore upheld the lower court’s fact determination that they did not include the matters at issue. Id. at 309-10.
Also, the Rhode Island Supreme Court, interpreting a statute somewhat different from the-uniform act but with nearly identical wording in relevant part to Iowa Code section 562A.15(2), said,
It is ... clear that the landlord may shift the responsibility for performing ordinary specified repairs and maintenance of the rented dwelling premises to the tenant, provided that the parties act in good faith; the parties agree in writing; the agreement is supported by adequate consideration; and the agreement is not in violation of [the Rhode'Island statute governing' landlord’s maintenance duties and the landlord’s ability to contract them away].
State Water Res. Bd. v. Howard, 729 A.2d 712, 715 (R.I.1999) (per curiam). In that case, the state leased residential properties to tenants on condition that tenants assumed the responsibility for all necessary maintenance and repairs in exchange for a deduction from the fair market value of rent. Id. at' 713. Because the leases did not “shift the responsibility to cure existing or past violations of the applicablé housing and building codes to the tenants” and the state had attempted to negotiate the repair-shifting provisions in good faith, the challenged provisions were upheld under Rhode Island law. Id. at 715.
I agree that an Operating lock on an exterior door is one aspect of habitability. See Brichacek v. Hiskey, 401 N.W.2d 44, 47 (Iowa 1987) (“On the record of this case we believe that a landlord is under a duty to provide a front door lock as a part of his *198 overall duty of providing habitable quarters.”)- And I assume that the burglary here, like most burglaries, resulted in the damaged side-entry door no longer being secure. However, Iowa Code section 562A.15(2) does not provide an exception for “specified repairs so long as they do not relate to habitability.” Instead, the exception is simply for specified repairs. Furthermore, if the parties’ ability to contract regarding specified repairs were limited by the landlord’s duty to perform any repair that relates to habitability, it is easy to foresee that many disputes would arise. Some door and window repairs relate to habitability; some do not. Thus, I believe the IURLTA allows a landlord and a tenant of a single-family home to agree that the tenant will perform specified repairs, where the subject matter is specified and the task to be performed can be fairly characterized as a repair. That is what section 562A.15(2) says.
Tenants living in a single-family residence may be in a better position than a landlord who is not on the scene to safeguard doors, screens, and windows from outside harm. Note that the argument bruited by the majority applies to all landlords and tenants of single-family residences. Thus, a lifelong Iowan who rents her home upon retiring to Florida could not contract that the renter would be responsible for repairing the doors to the home.
The court ultimately finds for De Stefa-no on an alternative, narrower ground. The court reasons that even if De Stefano might be required to ‘perform, specified repairs under section 562A.15(2), she cannot be required to pay for such repairs when performed by the landlord. While this ground is more plausible, I do not believe the IURLTA draws such a fine line. The IURLTA allows any provision “not prohibited by this chapter or other rule of law,” Iowa Code § 562A.9(1), while disallowing any provision that “waive[s] ... rights or remedies under this chapter,” id. § 562A.ll(l)(a). Here, the lease provision merely imposed on the tenant the duty to pay for a repair that the law authorized the parties to agree would be the tenant’s responsibility. Significantly, this is not a case where the tenant sought to perform the repair herself or himself and was denied permission to do so. Rather, the lease provided that repairs would be performed by Iowa City Maintenance unless the tenants obtained written authorization from the landlord. The tenants never sought such authorization.
For these reasons, I would hold that Iowa law does not prohibit a landlord and a tenant of a single-family residence from agreeing in the lease that the tenant will pay for the costs of repairing damage to a door resulting from third-party vandalism when the damage occurs during the lease term and is not due to the landlord’s negligence. I further note that other provisions in the IURLTA protect the tenant in other, more serious circumstances than a vandalized door. See id. § 562A.25 (authorizing the tenant to vacate all or part of the premises and terminate the lease or receive a rent reduction when “the dwelling unit or premises are damaged or destroyed by fire or casualty to an extent that enjoyment of the dwelling unit is substantially impaired”); see also 49 Am. Jur. 2d Landlord and Tenant § 704, at 679 (2006) (noting that even a general covenant to repair “merely binds the lessee to make ordinary repairs, as opposed to extensive structural repairs”).[20]
*199 III. Conclusion.
I agree with the court’s resolution of the automatic carpet-cleaning deduction, the bad-faith penalty, and attorneys’ fees. However, in my view, attorneys’ fees are included in the $5000 maximum amount in controversy recoverable in small claims. In addition, I do not believe Iowa law forbids lease provisions requiring the tenant of a single-family home to pay the costs of repairing door vandalism that occurs during the tenancy. If I were deciding this ease, I would affirm the thorough order of the district court except I would reverse the decision on punitive damages and remand for consideration of Attorney Warnock’s fees subject to the overall $5000 jurisdictional limit.
WATERMAN and ZAGER, JJ., join this concurrence in part and dissent in part.

. The majority uses the apt phrase: “the people’s court.” Thus, our court declined to give "preclusive effect to small claims adjudications in subsequent regular district court trials [because to do so] would be inconsistent with maintaining the simplicity and informality of small claims procedures.” Village Supply Inc. v. Iowa Fund, Inc., 312 N.W.2d 551, 554 (Iowa 1981).

. To be clear, I have no quarrel with how my colleagues have summarized Maday and Ayala in their majority opinion, But it is wrong to give the Lettenmaier decision any credence because it happens to cite to Maday and Ayala.

. A lessee of real property generally has an insurable interest in the leased property. See Neubauer v. Hostetter, 485 N.W.2d 87, 89-90 (Iowa 1992). In this case, the record indicates that the landlord had insurance for the *199 premises, but cost of the door repair was below the deductible.